Meredith Cavallaro
Tara H. Curtin
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas, 9th Floor
New York, New York 10020
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GOL OPHIR,

                           Plaintiff,

              v.

KONEKSA HEALTH INC. and CHRIS BENKO,

                         Defendants.

      :   No. 1:23-cv-09145 (DEH)

      :   Oral Argument Requested

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100
Attorneys for Defendants

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ...................................................................................... 2

    The Parties ......................................................................................................... 2

    The ELT and Plaintiff's Compensation Was Not Determined on the Basis of Age ................ 3

    Plaintiff Fails to Allege Substantial Similarity with Any Member of the ELT ...................... 5

    Plaintiff Had Conflicts with the ELT ................................................................... 5

    Plaintiff Did Not Report Unlawful Conduct or Engage in Protected Activity ..................... 6

ARGUMENT ................................................................................................................ 8

    I.    The Complaint Must Be Dismissed in Its Entirety Pursuant to Rule 12(b)(6). ............. 8

        A.  Legal Standard ........................................................................................ 8

        B.  Plaintiff Fails to Adequately Plead Age Discrimination ........................................ 9

            1.    Plaintiff's Age Discrimination Claim Under the ADEA Fails. ..................... 9

            2.    Plaintiff's Claims for Age Discrimination Under the NY HRLs Likewise Fail ................ 15

        C.  Plaintiff Fails to State an Equal Pay Claim Under The New York Labor Law ..... 16

        D.  Plaintiff's Retaliation Claims Must be Dismissed. ................................................. 18

            1.    Plaintiff Fails to Allege Retaliation under the NY HRLs. .............................. 18

            2.    Plaintiff Fails to Allege Retaliation under the NYLL. ................................... 22

CONCLUSION ........................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                        Page(s)

<u>Ashcroft v. Iqbal</u>,
556 U.S. 662 (2009)...........................................................................................................8

<u>Baguer v. Spanish Broad. Sys.</u>,
No. 04-cv-8393 (RJS), 2010 U.S. Dist. LEXIS 69212 (S.D.N.Y. July 12, 2010).......................14

<u>Bass v. World Wrestling Fed'n Entm't</u>,
129 F. Supp.2d 491 (E.D.N.Y. 2001) ..............................................................................17

<u>Batiste v. City Univ. of N.Y.</u>,
2017 U.S. Dist. LEXIS 105575 (S.D.N.Y. July 7, 2017) ...........................................................21

<u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544 (2007)...........................................................................................................8

<u>Bohnet v. Valley Stream Union Free Sch. Dist. 13</u>,
30 F. Supp. 3d 174 (E.D.N.Y. 2014) ...............................................................................11

<u>Brightman v. Prison Health Serv., Inc.</u>,
108 A.D.3d 739 (2d Dep't 2013)......................................................................................19

<u>Charles v. City of New York</u>,
No. 21-cv-05567 (JPC), 2023 U.S. Dist. LEXIS 57078 (S.D.N.Y. Mar. 31, 2023).....................15

<u>Cherry v. Toussaint</u>,
50 Fed.Appx. 476 (2d Cir. 2002).....................................................................................14

<u>Cooper v. N.Y. State Dep't of Labor</u>,
No. 1:14-CV-0717 (GTS/CFH), 2015 U.S. Dist. LEXIS 138029 (N.D.N.Y. Oct. 9, 2015) .........19

<u>Correa v. Mana Prods., Inc.</u>,
550 F. Supp. 2d 319 (E.D.N.Y. 2008) .............................................................................19

<u>Dfinity Found. v. N.Y. Times Co.</u>,
No. 22-cv-5418 (LAK), 2023 U.S. Dist. LEXIS 203127 (S.D.N.Y. Nov. 13, 2023)....................3n

<u>Doolittle v. Bloomberg L.P.</u>,
No. 22-cv-09136 (JLR), 2023 U.S. Dist. LEXIS 194764 (S.D.N.Y. Oct. 31, 2023) ..............15, 16

<u>E.E.O.C. v. Port Auth. Of N.Y. & N.J.</u>,
768 F.3d 247 (2d Cir. 2014)........................................................................................16, 18

E.E.O.C. v. Port Auth. of New York & New Jersey,
No. 10-cv-7462 (NRB), 2012 U.S. Dist. LEXIS 69307 (S.D.N.Y. May 17, 2012),
aff'd, 768 F.3d 247 (2d Cir. 2014) ............................................................................17

Edwards v. Thomson Reuters (Tax & Accounting) Inc.,
No. 19 Civ. 93 (ER), 2020 U.S. Dist. LEXIS 78856 (S.D.N.Y. May 5, 2020) ...................... 17-18

Eng v. City of New York,
715 F. App'x 49 (2d Cir. 2017) ................................................................................18

Faughnan v. Nassau Health Care Corp.,
No. 2:19-cv-03171, 2021 U.S. Dist. LEXIS 78845 (E.D.N.Y. March 18, 2021)........................17

Forrest v. Jewish Guild for the Blind,
3 N.Y.3d 295 (2004) ......................................................................................... 18-19

Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc.,
724 F. Supp. 2d 382 (W.D.N.Y. 2010) ........................................................................21

Gross v. FBL Fin. Servs., Inc.,
557 U.S. 167 (2009) .............................................................................................9

Harris v. Mills,
572 F.3d 66 (2d Cir. 2009) ......................................................................................8

Hazen Paper Co. v. Biggins,
507 U.S. 604 (1993) .............................................................................................9

Kaplan v. Beth Israel Med. Ctr.,
No. 07-cv-8842 (RPP), 2010 U.S. Dist. LEXIS 32200 (S.D.N.Y. March 31, 2010) ...................14

Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,
716 F.3d. 10 (2d Cir. 2013)................................................................................. 20-21

Ko v. JP Morgan Chase Bank, N.A.,
No. 16-cv-7707 (DAB), 2017 U.S. Dist. LEXIS 120930 (S.D.N.Y. July 31, 2017).............. 10-11

Krasner v. HSH Nordbank AG,
680 F. Supp. 2d 502 (S.D.N.Y 2010) .................................................................... 21-22

LeRoy v. Delta Air Lines,
No. 21-267-cv, 2022 U.S. App. LEXIS 29352 (2d Cir. Oct. 27, 2022) ................................18, 20n

Littlejohn v. City of New York,
795 F.3d 297 (2d Cir. 2015)....................................................................................19

iii

Livingston v. City of New York,
563 F. Supp. 3d 201 (S.D.N.Y. 2021)........................................................................15

Mabry v. Neighborhood Defender Serv.,
769 F. Supp. 2d 381 (S.D.N.Y. 2011)....................................................................9, 10

Marcus v. Leviton Mfg. Co., Inc.,
661 F. App'x 29 (2d Cir. 2016) .........................................................................9, 10, 12

McLeod v. Gen. Vision Servs. Inc.,
No. 13-cv-06824 (VSB), 2018 U.S. Dist. LEXIS 132395 (S.D.N.Y. Aug. 6, 2018) ...................15

Melman v. Montefiore Med. Ctr.,
98 A.D.3d 107 (1st Dep't 2012) .........................................................................15

Ndremizara v. Swiss Re Am. Holding Corp.,
93 F. Supp. 3d 301 (S.D.N.Y. 2015)........................................................................14

Pezhman v. City of New York,
851 N.Y.S.2d 14 (1st Dep't 2008) .........................................................................19

Quarless v. Bronx-Lebanon Hosp. Ctr.,
228 F. Supp. 2d 377 (S.D.N.Y. 2002), aff'd, 75 F. App'x 846 (2d Cir. 2003).............................10

Santiago v. Acacia Network, Inc.,
634 F. Supp.3d 143 (S.D.N.Y. 2022)........................................................................16

Spires v. MetLife Grp., Inc.,
No. 18-cv-4464 (RA), 2019 U.S. Dist. LEXIS 160181 (S.D.N.Y. Sept. 18, 2019) ......................10

Syeed v. Bloomberg L.P.,
568 F. Supp. 3d 314 (S.D.N.Y. 2021).........................................................................15

Talwar v. Staten Island Univ. Hosp.,
610 F. App'x 28 (2d Cir. 2015) .........................................................................16

Vega v. Hempstead Union Free Sch. Dist.,
801 F.3d 72 (2d Cir. 2015).........................................................................10

Werst v. Sarar USA Inc.,
No. 17-cv-2181 (VSB), 2018 U.S. Dist. LEXIS 44124 (S.D.N.Y. Mar. 16, 2018) ......................17

White v. Bridge Inc.,
No. 18-cv-1689 (AJN), 2019 U.S. Dist. LEXIS 168444 (S.D.N.Y. Sept. 30, 2019) ...................16

Zucker v. Five Towns Coll.,
No. 09 Civ. 4884 (JS) (AKT), 2010 U.S. Dist. LEXIS 85441 (E.D.N.Y. Aug. 18, 2010)............10

Statutes

29 U.S.C. § 623(a)(1)...........................................................................................................9

N.Y. Exec. Law § 296(1)(a)...............................................................................................15

N.Y. Exec. Law § 296(7)................................................................................................18, 19

N.Y.C. Admin. Code § 8-107(1)(a)(3) ..............................................................................15

N.Y.C. Admin. Code § 8-107(7)....................................................................................18, 19

NYLL § 194(1) ....................................................................................................................16

NYLL § 740(2) ....................................................................................................................22

Koneksa Health Inc. ("Koneksa" or the "Company") and Christopher Benko[1] ("Mr. Benko") (together, "Defendants") submit this memorandum of law in support of their motion ("Motion") to dismiss the Complaint filed by Gol Ophir ("Plaintiff") on October 17, 2023 (Dkt. No. 1) (the "Complaint" or "Compl.") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## PRELIMINARY STATEMENT

Plaintiff, the former General Counsel and Head of Corporate Development and Partnerships of Koneksa, has alleged claims of (i) discrimination on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 631, et seq. ("ADEA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290, et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107, et seq. (the "NYCHRL" and, together with the NYSHRL, the "NY HRLs"); (ii) unequal pay on the basis of age in violation of the New York Labor Law ("NYLL") § 194; and (iii) retaliation in violation of the NYLL § 740 and the NY HRLs.  Plaintiff's vague and conclusory Complaint, based on nothing more than a terminated employee's disgruntled conjecture, fails to meet the minimum pleading requirements of each of these claims.

Plaintiff's barebones age discrimination claim, which alleges that a few employees younger than Plaintiff received a higher base salary or more equity grants than Plaintiff (while acknowledging that other younger employees did not), fails to meet the "but-for" causation standard required under the ADEA., and also does not surpass the requirement under the NY HRLs that Plaintiff plead an inference that age was a motivating factor for any alleged adverse treatment by the Company.

---

[1]    Incorrectly referenced as "Chris" Benko in the case caption.

Plaintiff's unequal pay claim is devoid of a single piece of evidence explaining *how* any alleged comparator is similarly situated to Plaintiff in terms of equal skill, duties or responsibilities.  Conclusory allegations that each member of the executive leadership team, with unique titles as far afield as Head of Data Science and Chief People Officer, are similarly situated to Plaintiff, the former General Counsel and Head of Corporate Development and Partnerships, are implausible, baseless, and do not meet the pleading standards under the NYLL.

Plaintiff's claims of retaliation fail to meet multiple pleading requirements, including failure to allege protected activity under the NY HRLs and failure to allege a reasonable belief of an underlying violation of law, rule or regulation with respect to the NYLL.  Complaints that a violation *could potentially have occurred* are not protected under any statutes invoked by Plaintiff.  Additionally, under all statutes, Plaintiff fails to allege a causal connection between his purported protected activity and his termination.

For all the reasons stated herein, the Complaint should be dismissed in its entirety.

## FACTUAL BACKGROUND

### The Parties

Plaintiff is the former General Counsel and Head of Corporate Development and Partnerships of the Company.  Compl. ¶ 10.  Plaintiff was hired in December 2018 and was 51 years old when he was hired. Compl. ¶¶ 13, 15.  Plaintiff was a member of the Company's Executive Leadership Team ("ELT") and reported directly to Christopher Benko, the Chief Executive Officer ("CEO"). Compl. ¶¶ 9, 17.  Plaintiff alleges that for most of his employment, he was the oldest member of the Company's ELT and the second oldest employee at the Company. Compl. ¶¶ 16, 17.  However, Plaintiff fails to allege the ages, or even age ranges, of any other member of the ELT, let alone of all employees at the Company.

Koneksa is a biotech company that sells software and services for pharmaceutical companies that conduct clinical trials.  Compl. ¶ 11.  Koneksa was founded in 2013[2] and has its principal place of business in New York City.  Compl. ¶ 8.

Christopher Benko is the CEO of Koneksa and served as Plaintiff's direct supervisor.  Compl. ¶ 9.

**The ELT and Plaintiff's Compensation Was Not Determined on the Basis of Age**

Plaintiff alleges that he was a member of the Company's ELT, which consisted of nine executives.  Compl. ¶ 22.  Plaintiff fails to allege the names or titles of all nine members of the ELT, only identifying six others: the Chief Medical Officer, the Executive Vice President of Finance, the Chief People Officer, the CEO, the Head of Data Science, and the President.  Compl. ¶¶ 23, 30.

Plaintiff alleges that the Company represented to Plaintiff "that all of Defendant['s] top executives that were employed at the same level of [Plaintiff] (i.e., the [ELT]) are all treated the same and received the same base-level salary."  Compl. ¶ 21.  Plaintiff then alleges that "this quickly ceased to be true," and Plaintiff was not the only outlier in terms of base salary, as "at least five members of the [ELT] . . . received a base salary higher than [Plaintiff]."  Compl. ¶¶ 21, 23.  Accordingly, as alleged by Plaintiff, all members of the ELT "quickly ceased" to receive the same salary, and Plaintiff was compensated more than at least three members of the ELT who, as alleged, were younger than Plaintiff.  Compl. ¶¶ 16, 23.  Plaintiff does not allege any evidence that base salaries were determined on the basis of age.

---

[2]    See   Koneksa,   Koneksa's   Background   available   at: https://www.koneksahealth.com/background-leadership/; Dfinity Found. v. N.Y. Times Co., No. 22-cv-5418 (LAK), 2023 U.S. Dist. LEXIS 203127, at *2, n. 5 (S.D.N.Y. Nov. 13, 2023) ("Courts may take judicial notice of a party's website at the motion to dismiss stage.").

Plaintiff acknowledges that his base salary increased during his tenure with the Company. Compl. ¶ 24. Plaintiff alleges that certain younger members of the ELT received "extra grants of equity" and "significantly larger cash bonuses"; that a sales representative (not alleged to have been a member of the ELT) received "an advance on their cash bonus"; and that the Head of Business Development was vested with equity grants after failing to meet sales targets. Compl. ¶¶ 26-33. Plaintiff does not allege that these alleged benefits were provided to any other younger members of the ELT or to other younger employees in general, or that these benefits were motivated by age whatsoever. In fact, these benefits are only alleged to have been provided to a slim minority of the ELT, and, in two instances, to individuals who are not alleged to have been members of the ELT (the sales representative and the Head of Business Development). In each instance, Plaintiff was in the majority of ELT members, who, irrespective of age, did not receive such referenced benefit. Plaintiff again does not allege any basis to infer that these benefits were provided because of any employee's age, or even the ages, or age ranges, of the various recipients.

Plaintiff also alleges that he was informed by the Chief People Officer, Renee Kaspar,[3] that "he was the only member of the Executive Team that was paid below Koneksa's stated policies" of aiming to pay employees at the 50th percentile, with a minimum of the 25th percentile, based on Aon-Radford annual reports. Compl. ¶¶ 37, 40. Plaintiff alleges that another employee, alleged to be in his "early 60s," who was not on the ELT, also had a base salary below the 25th percentile based on the annual report. Compl. ¶¶ 42, 43. Plaintiff does not allege that Ms. Kaspar commented, or provided any basis to believe, that the Company determined salaries on the basis of age.

---

[3]      Incorrectly referenced as Renee "Kasper" in the Complaint.

**Plaintiff Fails to Allege Substantial Similarity with Any Member of the ELT**

Plaintiff alleges in conclusory fashion that he was similarly situated to other senior executives at the Company.  Compl. ¶ 19.  However, Plaintiff fails to identify all of the names, or even all of the titles, of the other nine members of the ELT.  He fails to identify any specific skills, experience, duties or responsibilities of ***any*** member.

Plaintiff alleges that the ELT included the Chief Medical Officer, the President and Chief Operating Officer ("COO"), the CEO, the VP of Finance (the Complaint is unclear as to whether this is the same alleged position as the Executive Vice President of Finance), the VP of People (again, unclear if this is a different role than Chief People Officer), and the Head of Data Science.  Compl. ¶¶ 23, 30.  The Head of Data Science is a co-founder and the largest individual shareholder of the Company, attributes not alleged of Plaintiff.  Compl. ¶ 29.  Plaintiff fails to allege in any manner how any of these roles – which have unique and varying titles – are substantially similar to Plaintiff's role of General Counsel and Head of Corporate Development and Partnerships.  Compl. ¶ 30.

The only other specific, alleged comparators Plaintiff identifies are: a sales representative and the Head of Business Development.  Compl. ¶¶ 31, 33.  Neither is alleged to be a senior executive or member of the ELT.  Plaintiff does not make even a barebones allegation of similarity to the salesperson, and he simply parrots that the Head of Business Development has "equal levels of skills, duties and responsibilities" as Plaintiff, without providing any evidence.  Compl. ¶ 34.

**Plaintiff Had Conflicts with the ELT**

Plaintiff admits that he had disagreements with other members of the ELT unrelated to his purported protected activity.  He claims that "[b]ecause of his insistence on accountability,

[Plaintiff] had many disagreements with . . . [the Company] President and [COO], about management styles, follow through, and strategy. Compl. ¶ 51.  Plaintiff acknowledges that he "challenged" the President and COO, requesting that he "change tactics or strategy."  Compl. ¶ 52.  Additionally, Plaintiff admits that Mr. Benko, Plaintiff's direct supervisor and the CEO, raised issues about his work and believed that Plaintiff was using his July 2023 one-on-one performance meeting to deflect from such issues.  Compl. ¶¶ 66, 68.

**<u>Plaintiff Did Not Report Unlawful Conduct or Engage in Protected Activity</u>**

Plaintiff alleges that in June 2023, Ms. Kaspar reported to him that at a social event, following a Senior Leadership Team offsite meeting, "someone had spiked her drink with alcohol when she was not looking and that, as a result, she got really drunk." Compl. ¶ 56.  Plaintiff alleges that the President and COO was present, and he and other managers "let it occur."  Compl. ¶ 57. While Plaintiff alleges that he was "seriously concerned," Ms. Kaspar – the Chief People Officer – discussed the incident with Plaintiff and chose not to move forward with a complaint.  Compl. ¶¶ 58, 61.  Plaintiff does not allege ***who*** was believed to have added the alcohol to Ms. Kaspar's drink.  Plaintiff does not allege that Ms. Kaspar expressed any personal concern about this incident or was distressed or upset about this incident in any way.  Plaintiff does not allege that Ms. Kaspar said that the alcohol was unwanted or that she believed anyone at the social event had wished to harm her.  Plaintiff does not allege that Ms. Kaspar stated or implied that she felt there was a gender-based component to this action or a risk of sexual harassment associated with the alcohol added to her drink.  Plaintiff does not allege that Ms. Kaspar stated that she felt she had been harmed.

Plaintiff alleges that he sought the advice of the Company's external counsel related to this incident, without seeking or receiving the permission of Mr. Benko.  Compl. ¶ 63.  Plaintiff

6

does not allege that he, rather than the Chief People Officer (Ms. Kaspar), had responsibility for retaining and seeking counseling from external counsel on human resource issues.  Plaintiff alleges that counsel recommended conducting an investigation as there may have been ***potential*** for sexual harassment and battery.  Compl. ¶ 64.[4]

Plaintiff alleges that he reported this incident to Mr. Benko in July 2023 during a one-on-one meeting. Compl. ¶ 66.  During the meeting, Plaintiff informed Mr. Benko of his particular concern that the President and COO – with whom Plaintiff routinely disagreed – was present for the incident and "fail[ed] to protect her."  Compl. ¶ 66.  Mr. Benko stated that he thought Plaintiff was attempting to deflect attention from their discussion, which was intended to be about issues related to Plaintiff's own performance.  Compl. ¶ 68.  Mr. Benko instructed Plaintiff to "drop it" and that Plaintiff should "stop."  Compl. ¶ 69.

Nevertheless, Plaintiff insisted that the incident be further investigated. Compl. ¶ 76.  Plaintiff does not allege whether he asked, or if the Company informed him, if the incident had already been investigated.  Plaintiff does not allege having any knowledge as to whether Mr. Benko had separately discussed this incident with Ms. Kaspar.

Plaintiff alleges he later relayed a recommendation memorandum to Mr. Benko drafted by outside counsel.  Compl. ¶ 76.  Plaintiff alleges that Mr. Benko terminated him two weeks later on August 1, 2023.  Compl. ¶ 77.  Plaintiff does not allege that, ***at any time*** during this meeting, he or Mr. Benko referenced the incident with Ms. Kaspar or Plaintiff's communications regarding same.  Plaintiff does not allege that Mr. Benko threatened or mentioned termination in

---

[4]     Plaintiff's unethical behavior in breaching Koneksa's attorney-client privilege through disclosing communications and advice of Company counsel in his capacity as General Counsel in the Complaint is deplorable.  Defendants will address Plaintiff's improper conduct at the appropriate time and reserve all rights related thereto.

any way earlier in July during their first meeting about the incident, or upon receiving Plaintiff's recommendation and the outside counsel memorandum.  Plaintiff does not allege that he had a term of employment or was anything other than an at-will employee.

## ARGUMENT

I.    **The Complaint Must Be Dismissed in Its Entirety Pursuant to Rule 12(b)(6).**

A.    **Legal Standard**

Plaintiff's claims of age discrimination under the ADEA and the NY HRLs, unequal pay under the NYLL, and retaliation under the NY HRLs and the NYLL must each be dismissed for failure to state a claim.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, but the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action."  See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 663); see also Twombly, 550 U.S. at 555 (a plaintiff must provide "more than labels and conclusions" to show entitlement to relief).  A plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  Here, the allegations in the Complaint are nothing more than "legal conclusions and threadbare recitals of the elements of a cause of action" and should be dismissed.  Harris, 572 F.3d at 71-72.

**B.     Plaintiff Fails to Adequately Plead Age Discrimination.**

Plaintiff's allegations in support of his age discrimination claims rest solely on Plaintiff's allegations that: (i) he is older than most employees, and (ii) a minimal number of younger employees received certain compensation benefits that he did not receive.   Such allegations are insufficient under the "but-for" causation standard of the ADEA, as well as the requirement that there be an inference that age is a motivating factor for the alleged discrimination under the NY HRLs.   Accordingly, the Complaint does not state a cause of action for age discrimination, and Plaintiff's first, third and fourth claims must be dismissed pursuant to Rule 12(b)(6).

**1.   Plaintiff's Age Discrimination Claim Under the ADEA Fails.**

The ADEA protects employees over the age of forty from age-based discrimination relating to "compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). This clause has been interpreted as prohibiting ***intentional*** disparate treatment based on age. Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993).  At the pleading stage, a plaintiff is not required to come forth with allegations sufficient to make a *prima facie* case of employment discrimination, but must plausibly allege that adverse action was taken against the employee by the employer, and that age was the ***"but-for"*** cause of the adverse action.  Marcus v. Leviton Mfg. Co., Inc., 661 F. App'x 29, 31-32 (2d Cir. 2016); Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) (holding that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision" to establish a disparate treatment claim under the ADEA).

To survive a motion to dismiss, a plaintiff is required to allege an adverse action and "set forth factual circumstances from which discriminatory motivation for such action can be inferred." Mabry v. Neighborhood Defender Serv., 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011).

"A plaintiff must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" Marcus, 661 F. App'x at 32 (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015)).

      Simply stating that another employee is younger and treated better, without more, is insufficient to state an age discrimination claim under the ADEA.  See Spires v. MetLife Grp., Inc., No. 18-cv-4464 (RA), 2019 U.S. Dist. LEXIS 160181, at *20-21 (S.D.N.Y. Sept. 18, 2019) (allegations that plaintiff was the oldest staff member in his department and that another substantially younger employee was given a promotion over plaintiff were insufficient to state a claim for age discrimination); see also Zucker v. Five Towns Coll., No. 09 Civ. 4884 (JS) (AKT), 2010 U.S. Dist. LEXIS 85441, at *2 (E.D.N.Y. Aug. 18, 2010) (finding that "allegations concerning plaintiff's satisfactory work performance, termination, and much younger replacement do not – by themselves – suffice to plead an age discrimination claim.").

      "Allegations supporting motive may include preferential treatment given to similarly situated individuals or remarks that convey discriminatory animus." Mabry, 769 F. Supp. 2d at 392.  To be similarly situated, employees must be substantially similar as to specific work duties, education, seniority and performance history, all of which affect an employee's rate of pay. See Quarless v. Bronx-Lebanon Hosp. Ctr., 228 F. Supp. 2d 377, 383-84 (S.D.N.Y. 2002), aff'd, 75 F. App'x 846 (2d Cir. 2003).  "In the absence of such allegations, dismissal at the pleading stage is warranted." Mabry, 769 F. Supp.2d at 392; see also, e.g., Ko v. JP Morgan Chase Bank, N.A., No. 16-cv-7707 (DAB), 2017 U.S. Dist. LEXIS 120930, at *8-9 (S.D.N.Y. July 31, 2017) (dismissing ADEA age discrimination complaint where plaintiff claimed the stated reason for her termination was pretext for age discrimination, but plaintiff did not allege any discriminatory

10

remarks or similarly situated individuals, other than to say that she was replaced by a younger employee); Bohnet v. Valley Stream Union Free Sch. Dist. 13, 30 F. Supp. 3d 174 (E.D.N.Y. 2014) (granting a motion to dismiss an ADEA claim where plaintiff failed to accompany her conclusory allegations with specific statements of fact showing that the alleged adverse employment action was made because of her age, including plaintiff's failure to allege that defendant considered her age in any way or the age of the purported comparators or that defendant made any age-related comments).

Here, Plaintiff does not sufficiently allege facts to infer that he was paid less than other employees ***because of*** his age.  Plaintiff simply alleges that a handful of younger employees received certain compensation benefits that he did not receive.  Plaintiff alleges that during "extended periods of time," he was the oldest member of the nine-person Executive Leadership Team.  Compl. ¶ 22.  He does not allege the ages, or age range, of the other members of the ELT. He alleges that at various times during his employment, out of those nine executives, at least five executives received a base salary higher than Plaintiff.  Compl. ¶ 23.  Accordingly, Plaintiff received a ***higher*** base salary than the three other younger members of the Executive Leadership Team.  Plaintiff does not allege that compensation was determined based on age or that he was substantially similar to these five members of the ELT in terms of specific work duties, education, seniority and performance history.  Id.

Plaintiff also alleges that the Company gave "extra" grants of equity to three of the members of the Executive Leadership Team that Plaintiff did not receive.  Compl. ¶ 26.  This, again, confirms that Plaintiff was treated the same, or better than, at least five other younger members of the Executive Leadership Team – the majority of the team.  Plaintiff does not allege that these "extra" grants of equity were awarded based on age.  Nothing about these allegations

raises even the slightest inference of age-based discrimination.

Plaintiff's other attempted comparisons are likewise unavailing.  First, Plaintiff alleges that the Head of Data Science is younger than Plaintiff and received a significantly larger retention bonus than Plaintiff.  Compl. ¶ 29.  Plaintiff admits that the Head of Data Science is a co-founder and the largest individual shareholder of the Company (Id.); Plaintiff is neither. Plaintiff does not allege this bonus was provided ***because of*** the Head of Data Science's age. Plaintiff's allegation that he is similarly situated to the Head of Data Science is nothing more than a conclusory recitation that somehow the Head of Data Science "require[s] equal levels of skills, duties, and responsibilities" as the General Counsel. Compl. ¶ 30.  Common sense suggests that this statement is inaccurate given that Plaintiff is an attorney in a legal position and the Head of Data Science is ostensibly in a data science-based role.  Nevertheless, simply asserting the bare conclusion that they hold the same level of skill, duties and responsibilities, without more, is insufficient to establish that they are similarly situated.  See Marcus, 661 F. App'x at 32-33 (affirming district court's grant of motion to dismiss ADEA claim where plaintiff alleged two younger employees were not subject to adverse action for the same conduct as plaintiff since pleading provided insufficient information as to whether the two employees were otherwise similarly situated).

Second, Plaintiff references an unnamed sales representative who is younger than Plaintiff and who was given an advance on their cash bonus "despite making no sales at all." Compl. ¶ 31.  Plaintiff does not allege that the treatment of this sales representative had anything to do with their age.  The allegation is both insufficient to establish a true comparator and entirely irrelevant.  Plaintiff does not even allege that he performed a similar role as this individual. Plaintiff's position has no relation to a sales representative: there is no allegation that the sales

representative was on the ELT or was a senior executive; there is no allegation that Plaintiff made sales or had sales targets; and Plaintiff's job title suggests that he did not.  Further, Plaintiff does not allege that Plaintiff ever sought or was denied an advance on his cash bonus; thus, the comparison of treatment is entirely irrelevant.

The third and final purported similarly situated employee identified in the Complaint is the Head of Business Development, who Plaintiff again generally alleges is "younger" and had "equal levels of skills, duties and responsibilities," without explaining *how* or *why*.  Compl. ¶ 34.  The Head of Business Development is alleged to have been vested with equity grants despite failing to meet the sales targets his employment agreement required.  Compl. ¶ 33.  The Complaint makes no allegation that this individual's age had anything to do with the Company's decision to provide these equity grants.

Besides these alleged comparators, Plaintiff attempts to establish a claim under the ADEA by alleging that his compensation violated Mr. Benko's statement that all members of the Executive Leadership Team would be paid the same base salary, and violated the Company's policy of paying employees within a certain percentile range for their respective roles per an industry-specific report. Compl. ¶¶ 21, 35-37.  The Complaint also alleges that the Company's Chief People Officer told Plaintiff that he was being underpaid compared to the other members of the Executive Leadership Team (Compl. ¶ 39) and that another employee who was not on the ELT who was in his early 60s was also under the purported salary range specified in the report (Compl. ¶ 43).  The Complaint, however, fails to provide any basis to infer that any such alleged differences in pay were determined *because of* Plaintiff's or the other employee's age.

Plaintiff admits that the original policy of paying equal base salaries to the ELT "ceased to be true."  Compl. ¶ 21.  It is not alleged to have ceased to be true *only* for Plaintiff, nor

is it alleged that the policy change was made because of anyone's age.  Not once does the Complaint allege that any employee's age was ***the***, or even ***a***, determining factor for any purported preferential treatment.  Compl. ¶¶ 25-34.

The ADEA claim separately and independently fails because the Complaint fails to state or even estimate how much younger any employee is compared to Plaintiff.  Without evidence that any comparator is "significantly younger" than Plaintiff (*e.g.*, more than a few years younger), the mere allegation that a similarly situated employee is "younger" is insufficient to suggest an inference of age discrimination.  Baguer v. Spanish Broad. Sys., No. 04-cv-8393 (RJS), 2010 U.S. Dist. LEXIS 69212, at *40-41 (S.D.N.Y. July 12, 2010) (dismissing an age discrimination claim where the difference between plaintiff and his comparator is only eight years, which the court found did not support an inference of discrimination); see also Kaplan v. Beth Israel Med. Ctr., No. 07-cv-8842 (RPP), 2010 U.S. Dist. LEXIS 32200 (S.D.N.Y. March 31, 2010) (concluding that a three-year age difference is insufficient to create an inference of discrimination).  Having failed to plead any comparators' age whatsoever, no inference of age discrimination can be deduced.  Ndremizara v. Swiss Re Am. Holding Corp., 93 F. Supp. 3d 301, 316 (S.D.N.Y. 2015) (dismissing ADEA and NYSHRL claims in part for failure to allege age of allegedly similarly situated employees and whether Defendant knew their ages).

Additionally, while Plaintiff brings his ADEA claim against "Defendants" (Compl. ¶ 83), Defendant Benko cannot be held liable under the ADEA as the statute does not permit individual liability.  Cherry v. Toussaint, 50 Fed.Appx. 476, 477 (2d Cir. 2002) ("the ADEA precludes individual liability").

Accordingly, the allegations in the Complaint are insufficient to state a viable claim for age discrimination under the ADEA, and Plaintiff's first cause of action must be dismissed.

##### 2.  Plaintiff's Claims for Age Discrimination Under the NY HRLs Likewise Fail.

Under the NYCHRL and the NYSHRL it is unlawful for an employer to discriminate against a person in compensation or in terms, conditions or privileges of employment because of the actual or perceived age of that person.  See N.Y.C. Admin. Code § 8-107(1)(a)(3); N.Y. Exec. Law § 296(1)(a).  Claims under the NYCHRL "are governed by a more permissive standard" than under the ADEA.  McLeod v. Gen. Vision Servs. Inc., No. 13-cv-06824 (VSB), 2018 U.S. Dist. LEXIS 132395, at *17 (S.D.N.Y. Aug. 6, 2018).  Since the 2019 amendments to the NYSHRL, the standards under both NY HRLs are generally considered together.  Livingston v. City of New York, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); Syeed v. Bloomberg L.P., 568 F. Supp. 3d 314, 344 (S.D.N.Y. 2021) (analyzing the plaintiff's NYCHRL claims "under the amended and more lenient NYSHRL standard"); Charles v. City of New York, No. 21-cv-05567 (JPC), 2023 U.S. Dist. LEXIS 57078, at *6 (S.D.N.Y. Mar. 31, 2023) (considering the plaintiff's NYCHRL and NYSHRL claims together).

Pursuant to the NYCHRL, a plaintiff must allege only that they have been "treated less well *at least in part* because of" their age.  Doolittle v. Bloomberg L.P., No. 22-cv-09136 (JLR), 2023 U.S. Dist. LEXIS 194764, at *19 (S.D.N.Y. Oct. 31, 2023) (internal citations omitted) (emphasis added).  Plaintiff must allege that age "was *one of the motivating factors*, even if it was not the sole motivating factor, for" the unequal treatment.  Melman v. Montefiore Med. Ctr., 98 A.D.3d 107 (1st Dep't 2012) (emphasis added).

The Complaint lacks *any* plausible inference that age was considered in any way in compensation decisions.  Plaintiff's threadbare allegations that a few other "younger" employees were compensated in different ways more preferentially than Plaintiff (while other younger employees were not), without alleging that age motivated these actions in any way, does not meet

even the more lenient standards of the NY HRLs.

Plaintiff also fails to allege any conduct, statement or remarks *whatsoever* that give rise to an inference of age discrimination. White v. Bridge Inc., No. 18-cv-1689 (AJN), 2019 U.S. Dist. LEXIS 168444 (S.D.N.Y. Sept. 30, 2019) (dismissing age discrimination claims under the NYCHRL and NYSHRL for failing to sufficiently allege circumstances giving rise to an inference that plaintiff's age was a motivating factor for the alleged differential treatment, where plaintiff merely alleges that she was paid less than other coworkers); Doolittle, 2023 U.S. Dist. LEXIS 194764, at *19-24 (dismissing NYSHRL and NYCHRL age discrimination claims where allegations lacked a plausible inference that age motivated the alleged differential treatment). Thus, Plaintiff's third and fourth causes of action for age discrimination arising under the NYSHRL and the NYCHRL should be dismissed.

### C.    Plaintiff Fails to State an Equal Pay Claim Under The New York Labor Law

Plaintiff's allegation that the Company violated the NYLL by paying Plaintiff unequally on the basis of his age is meritless. The NYLL prohibits paying an employee who is a member of a protected class less than an employee who is not, for equal or substantially similar work. See NYLL § 194(1). Equal pay claims under NYLL § 194 are governed by the same framework as claims under the federal Equal Pay Act ("EPA") and may be evaluated under the same standard. Talwar v. Staten Island Univ. Hosp., 610 F. App'x 28, 30 n.2 (2d Cir. 2015); Santiago v. Acacia Network, Inc., 634 F. Supp.3d 143, 155 n. 3 (S.D.N.Y. 2022).

To state an equal pay claim under the NYLL, the complaint must allege sufficient factual matter, accepted as true, to permit a reasonable inference that the relevant comparator's job was substantially equal to that of the plaintiff. E.E.O.C. v. Port Auth. Of N.Y. & N.J., 768 F.3d 247 (2d Cir. 2014). When information about a comparator is alleged in a conclusory fashion or is

otherwise insufficient to show substantially similar work, it is grounds for dismissal.  See Faughnan v. Nassau Health Care Corp., No. 2:19-cv-03171, 2021 U.S. Dist. LEXIS 78845, at *21 (E.D.N.Y. March 18, 2021) (granting motion to dismiss federal and state equal pay claims where plaintiff fails to allege a valid comparator); E.E.O.C. v. Port Auth. of New York & New Jersey, No. 10-cv-7462 (NRB), 2012 U.S. Dist. LEXIS 69307, at *10-11 (S.D.N.Y. May 17, 2012) (granting motion to dismiss EPA claim and holding that "superficial comparisons based on job title or code are insufficient"), aff'd, 768 F.3d 247 (2d Cir. 2014); Bass v. World Wrestling Fed'n Entm't, 129 F. Supp.2d 491, 503 (E.D.N.Y. 2001) ("Even at the motion to dismiss stage, vague, conclusory, and speculative allegations will not save an Equal Pay Act claim.").

Plaintiff's only allegations concerning his comparators are conclusory statutory recitations that various employees had "equal levels of skills, duties, and responsibilities" as Plaintiff (Compl. ¶¶ 30, 34 (Head of Data Science and Head of Business Development)) and that generally, Plaintiff was "similarly situated" to younger executives and employees (Compl. ¶¶ 2, 19).  Such barebones recitations do not survive dismissal.  See Werst v. Sarar USA Inc., No. 17-cv-2181 (VSB), 2018 U.S. Dist. LEXIS 44124 (S.D.N.Y. Mar. 16, 2018) (granting motion to dismiss EPA claim where plaintiff's allegations were simply a formulaic recitation of the language of the EPA).

Plaintiff never once even attempts to describe the specific skills, duties, or responsibilities of another Company employee, or even himself.  Plaintiff's failure to plead the skills and duties of his alleged comparators, how they compare to his own, or the nature of the similarities in qualifications between Plaintiff and his purported comparators is fatal to his claim. See Edwards v. Thomson Reuters (Tax & Accounting) Inc., No. 19 Civ 93 (ER), 2020 U.S. Dist. LEXIS 78856, at *7-8 (S.D.N.Y. May 5, 2020) (holding that, at the motion to dismiss stage, a

viable equal pay claim "'depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination,' are insufficient.") (citation omitted); Eng v. City of New York, 715 F. App'x 49, 52 (2d Cir. 2017) (affirming dismissal of equal pay claims for failure to provide factual allegations about comparator's job duties, skills, efforts or responsibilities beyond generic job description); Port Auth. Of N.Y. & N.J., 768 F.3d at 255-259 (affirming dismissal of EPA complaint where the complaint relied solely on broad generalizations drawn from job titles in support of the substantially equal work requirement).  Plaintiff has not even identified each member of the ELT and their title, nor has he alleged that each had the same duties as himself or each other – an allegation that is inherently implausible for executive leadership of this kind.  Accordingly, Plaintiff's second cause of action for unequal pay under NYLL § 194 must be dismissed.

### D.  Plaintiff's Retaliation Claims Must be Dismissed.

Plaintiff fails to state a claim for retaliation arising under the NY HRLs or the NYLL.

### 1.  Plaintiff Fails to Allege Retaliation under the NY HRLs.

Plaintiff's invocation of the NY HRLs is a gross misuse of those statutes. The NYSHRL and the NYCHRL prohibit employers from retaliating against an employee because the employee opposes any practice made unlawful by those statutes.  See N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8-107(7).  To survive a motion to dismiss, a plaintiff claiming retaliation must allege that the plaintiff engaged in protected activity under the relevant statute, i.e., opposing an employer's discriminatory practice.  LeRoy v. Delta Air Lines, No. 21-267-cv, 2022 U.S. App. LEXIS 29352, at *7 (2d Cir. Oct. 27, 2022).  To set forth a claim for retaliation under the NY HRLs, Plaintiff must plead facts alleging that "(1) [he] has engaged in protected activity, (2) [his]

employer was aware that [he] participated in such activity, (3) [he] suffered an adverse employment action based upon [his] activity, and (4) there is a causal connection between the protected activity and the adverse action." See Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312-13 (2004); Brightman v. Prison Health Serv., Inc., 108 A.D.3d 739, 740 (2d Dep't 2013).

A "protected activity" under the NY HRLs is conduct that "oppos[es] or complain[s] about unlawful discrimination." See Forrest, 819 N.E.2d at 313; see also N.Y. Exec. L. § 296(7); N.Y.C. Admin. Code § 8-107(7).  A complaint "of conduct other than unlawful discrimination is not a protected activity subject to a retaliation claim under the [NY HRLs]." See Pezhman v. City of New York, 851 N.Y.S.2d 14 (1st Dep't 2008).  "To the extent an employee is required as part of [their] job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity under [the] opposition clause, because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by [the statute]." Cooper v. N.Y. State Dep't of Labor, No. 1:14-CV-0717 (GTS/CFH), 2015 U.S. Dist. LEXIS 138029, at *15-*17 & n.2 (N.D.N.Y. Oct. 9, 2015) (citing Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015)) (holding plaintiff had not adequately alleged protected activity when she merely alerted supervisors to federal nondiscrimination compliance issue, but had not alleged any actual discriminatory act, and noting that NYSHRL claims are analyzed under the same framework as Title VII claims); see also Correa v. Mana Prods., Inc., 550 F. Supp. 2d 319, 330 (E.D.N.Y. 2008) (holding that "[i]n order for employees in human resources positions to claim retaliation they need to first clearly establish that they were engaged in protected activities other than the general work involved in their employment").

Here, Plaintiff fails to plead that he has done anything besides allegedly performing within the scope of his duties as General Counsel to the Company.  Plaintiff alleges that he heard Ms. Kaspar's recounting of the incident and then proceeded to take steps "as Koneksa's General Counsel" by "recommending that Ms. Kasp[a]r make a formal complaint" and seeking legal advice from the Company's outside counsel.  Compl.  ¶¶ 58, 60, 63.  Then Plaintiff "informed Defendant Benko about the incident" and conveyed that it should be "taken seriously."  Compl. ¶¶ 66.  Nothing alleged is outside the typically required job duties of a legal officer of a company.

While Plaintiff alleges "he believed it was illegal . . . and was likely to be understood as sexual harassment and/or battery" (Compl. ¶ 70), there is no basis for a reasonable belief of unlawful discrimination on the basis of a protected class.[5]  In Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d. 10 (2d Cir. 2013), the plaintiff brought a retaliation claim under the NYSHRL alleging that her complaint about a consensual affair between two coworkers was a claim of harassment and gender discrimination against herself.  The Second Circuit affirmed the district court's dismissal of the claim holding that nothing in the complaint indicated that the plaintiff's gender played a substantial role in any alleged favoritism of the coworker who was having the consensual affair, and therefore it could not reasonably be considered a complaint of gender discrimination or sexual harassment.  Id. at 15-17.  Although the plaintiff in Kelly repeatedly used the words "discrimination" and "harassment" when she complained about the affair, the Court determined that "there is no indication that [plaintiff] believed that her sex had anything to do with her treatment or that defendants could have

---

[5]     Moreover, the reasonableness of the belief is assessed "in light of the totality of the circumstances" and the "perspective of a reasonable similarly situated person[;]" here, not just an employee, but an attorney.  LeRoy, 2022 U.S. App. LEXIS 29352, at *12 ("The principle is very forgiving, but it does not transform every complaint into activity protected under the NYCHRL.").

understood her statements as such" or that "her sex, in one way or another, played a substantial role in [the complained of adverse treatment]." Id. at 17.  Accordingly, the Second Circuit affirmed dismissal of the retaliation claim on the grounds that, *inter alia*, plaintiff had not engaged in protected activity under the NYSHRL.  Id.; see also Batiste v. City Univ. of N.Y., 2017 U.S. Dist. LEXIS 105575, at *29 (S.D.N.Y. July 7, 2017) (complaints "***unaccompanied by any indication that plaintiff's protected class status caused the unfairness, do[] not qualify as protected activity***.") (emphasis added).

Here, Plaintiff alleges that the protected activity in which he engaged was "complain[ing] about alleged sexual harassment and battery."  Compl. ¶ 108.  A complaint of battery is not a protected complaint under the NY HRLs.  Moreover, there is no allegation that Plaintiff had a reasonable belief that Ms. Kaspar's gender or sex had anything to do with the incident, in which an unnamed and unidentified individual allegedly added alcohol to her drink. Ms. Kaspar is not alleged to have stated she believed she was subjected to sexual harassment, or that Plaintiff reasonably believed anything other than ***the potential*** for sexual harassment had occurred.  Compl. ¶ 80.  That the incident ***could have potentially*** led to an incident of sexual harassment, but ***did not***, is an unworkable interpretation of the law, and insufficient to establish that Plaintiff engaged in protected activity under the NY HRLs.  See, e.g., Foster v. Humane Soc'y of Rochester & Monroe Cnty., Inc., 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (granting motion to dismiss retaliation claim when the plaintiff's "own allegations . . . show instead that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex"); Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 521 (S.D.N.Y 2010) (granting motion to dismiss retaliation claim where "the overall content and context of [the plaintiff's] internal complaints suggest, at most, a consensual affair that

— while perhaps unfair, bad for morale, and detrimental to the department and the company — in itself harmed no one on account of a protected characteristic.").

Further, Plaintiff fails to allege causation – that his termination occurred ***because of*** his disclosure.  While Plaintiff pleads in a conclusory fashion that the termination occurred because he reported this incident, Plaintiff does not allege that he or Mr. Benko at any time during the August 1, 2023 meeting referenced the incident with Ms. Kaspar or Plaintiff's communications regarding the same.  Plaintiff alleges that Mr. Benko was upset during their earlier July meeting, not about the reporting of the incident, but about Plaintiff's involvement of outside counsel (without his permission) and Plaintiff's attempt to "deflect from issues with his [own] work" during his performance meeting. Compl. ¶¶ 68, 72. Plaintiff does not allege that Mr. Benko threatened or mentioned in any way discipline or termination earlier in July during their first meeting about the incident, or upon receiving Plaintiff's recommendation and the outside counsel memorandum.  Accordingly, Plaintiff fails to adequately plead that his complaint caused his termination, and because he also fails to allege a protected complaint, the fifth and sixth causes of action should be dismissed.

## 2. **Plaintiff Fails to Allege Retaliation under the NYLL.**

Plaintiff attempts to state a claim under Section 740 of the NYLL, known as New York's Whistleblower Statute, which prohibits "[a]n employer" from taking "any retaliatory action against an employee" because the employee:

> [D]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety.

NYLL § 740(2).

Plaintiff could not have reasonably believed that the alleged activity he reported to Mr. Benko was in violation of law, rule or regulation or that it posed a substantial and specific danger to the public health or safety.

Plaintiff alleges that in July 2023 he reported to Mr. Benko that Ms. Kaspar reported to him that at a social event, "someone had spiked her drink with alcohol when she was not looking." Compl. ¶¶ 56, 66. Plaintiff also alleges having reported that the President and COO – with whom Plaintiff routinely disagreed (Compl. ¶ 51) – was present for the incident. Compl. ¶ 74. Though Plaintiff alleges that he was "concerned" (Compl. ¶ 59), he does not allege any facts that would support a reasonable belief that the reported activity violated the law.

Specifically, Plaintiff does not identify the individual who put the alcohol in Ms. Kaspar's drink, or the intent or motivations of such individual. Plaintiff does not allege that the President and COO was involved in putting the alcohol in Ms. Kaspar's drink or that he had any prior knowledge or participation, only that he and "several other senior managers" saw it and "let it occur." Compl. ¶ 57. Plaintiff does not allege that Ms. Kaspar expressed any personal concern about this incident or was distressed or upset in any way about this incident. Plaintiff does not allege that Ms. Kaspar reported that she felt she had been harmed or injured in any way.

Plaintiff's conclusory allegation that he had complained about "sexual harassment and battery" in unavailing. Plaintiff did not ever make a claim of sexual harassment; rather, he claimed someone added alcohol to Ms. Kaspar's drink. Plaintiff did not claim there was any gender or sex-based component of the incident, without which sexual harassment is not plausible. Plaintiff fails to allege that Ms. Kaspar said or implied that the alcohol was unwanted or that she believed anyone at the social event had wished to harm her. Since battery requires physical contact to be intentional and harmful, Plaintiff's allegations, which lack any indication of who was alleged

23

to have added the alcohol and what their motivations were, do not permit a reasonable inference that battery had occurred.

For the reasons discussed in Section I.D.1 above, Plaintiff has also failed to sufficiently allege causation between his reporting of the spiked drink incident and his termination. Accordingly, Plaintiff's seventh cause of action for retaliation under the NYLL should be dismissed.

## **CONCLUSION**

For all of the reasons stated herein, Plaintiff has failed to adequately allege each claim, and the Complaint should be dismissed in its entirety.

Dated:   New York, New York
         December 19, 2023

PADUANO & WEINTRAUB LLP

By: /s/ Tara H. Curtin
        Meredith Cavallaro
        Tara H. Curtin
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100
mc@pwlawyers.com
tc@pwlawyers.com

*Attorneys for Defendants*