JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

| | |
|---|---|
| Charles Joseph | 32 Broadway, Suite 601 D. |
| Maimon Kirschenbaum | New York, NY 10004 |
| Denise Schulman | Phone (212) 688-5640 |
| Josef Nussbaum | Fax (212) 688-2548 |
| Lucas C. Buzzard | www.jk-llp.com |
| Leah Seliger | |
| Michael DiGiulio | |

April 16, 2024

**Via ECF**

Honorable Dale E. Ho
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Ophir v. Koneksa Health Inc., et al.*, No. 1:23-cv-09145– Plaintiff's Letter Motion to Compel Discovery

Dear Judge Ho:

We represent the Plaintiff in the above referenced matter and write pursuant to your Honor's Individual Practices to raise certain discovery disputes. The parties met and conferred by phone about these disputes on April 11, 2024 at 10:30 a.m. At the end of the call, Plaintiff stated that the parties were at an impasse and he would request a discovery conference with the Court. Plaintiff seeks to compel Defendants to produce responsive documents and respond to outstanding discovery requests.[1]

By way of background, Plaintiff was Defendant Koneksa Health Inc.'s General Counsel until he was terminated on August 15, 2023. Plaintiff asserts age discrimination, unequal pay, and retaliation claims. With respect to age discrimination and unequal pay, Plaintiff contends that Defendants paid him less overall compensation (i.e., a lower base salary, less above-base compensation, and fewer grants of equity) because of his age. Plaintiff further contends that he was terminated in retaliation for reporting and taking steps to investigate an incident in which a senior executive was drugged during an off-site leadership retreat.

**Requests for the Production of Documents[2]**

RFP Nos. 5 and 6: Plaintiff seeks all documents concerning Plaintiff's compensation. Defendants are withholding responsive documents concerning stock transactions. Plaintiff's employment contract allowed him to sell his shares of the company if other shareholders were allowed to, including selling to investors during a fundraising round. Plaintiff knows that younger, executives sold shares to investors, and Defendants did not notify Plaintiff and allow to sell his shares as well. Defendants have not produced any documents related to the selling of these shares, and the decision not to notify or include Plaintiff in these stock transactions is relevant to Plaintiff's discriminatory pay claims.

---

[1] Defendants have withheld documents based on but have not yet produced a privilege log. They have agreed to produce a privilege log by April 26. In addition, Defendants have produced at least 14 responsive documents in a format that Plaintiff cannot access. Defendants have represented that they will provide an update by April 26 as to the accessibility of these documents. Plaintiff reserves the right to raise issues related to the privilege log and unformatted documents.

[2] Defendants' document responses and objections are attached as Ex. 1.

RFP Nos. 8, 10, 11, 12, and 13: Plaintiff requested all documents concerning compensation, including salary, equity grants, and bonuses, received by every member of the Defendant's leadership team, comprised of the Executive Leadership Team ("ELT") and Senior Leadership Team ("SLT"), during Plaintiff's employment, documents reflecting compensation policies for the ELT and SLT, as well as each members resume, and documents reflecting the job duties and responsibilities of each ELT and SLT member. Plaintiff was a member of the ELT, and Plaintiff alleges that the SLT is made up of other high-level executives (including 'C-Level' executives) whose pay and job duties are relevant to the case because they are similarly situated to Plaintiff. In addition, Plaintiff alleges that another member of the SLT was also under paid because of his age, which evinces a pattern and practice of discriminatory pay and is clearly relevant to Plaintiff's claims.

Defendants have refused to produce any responsive documents and assert that they are irrelevant. In fact, as the compensation of ELT and SLT members are centrally relevant to Plaintiff's discrimination and equal pay claims, as he contends these are appropriate comparators. *See e.g., Vuona v. Merrill Lynch & Co., Inc.*, Case No. 10 Civ. 6529, 2011 U.S. Dist. LEXIS 131491, at *12 (S.D.N.Y. Nov. 15, 2011) ("The purpose of discovery here is, in part, to identify the universe of proper comparators. Pending discovery, the Court is not in a position to hold that those persons are necessarily improper comparators."). Plaintiff contends that he was paid less than other members of the ELT and SLT because of his age. What ELT and SLT members received as compensation, and what their job duties and responsibilities were, are material to Plaintiff's claims. This request is not overbroad or unduly burdensome, as Defendants can easily produce annual W-2 forms,[3] the last paycheck of each year, a Carta Report (showing equity grants from Koneksa, together with any approved sales and transfers of equity) for each ELT and SLT member for each year, and any other loan documents, offer letters, separation agreements, and spreadsheets related to ELT and SLT compensation, as well as any job descriptions or performance reviews.

RFP No. 14: Plaintiff seeks documents sufficient to show the ages of all ELT and SLT members throughout Plaintiff's employment. Defendants have only produced a document reflecting ages of ELT members in August 2023 and nothing for SLT members. As Plaintiff alleges that he is similarly situated to SLT members, their ages are relevant to his age discrimination claims, and responsive documents should be produced.[4]

RFP Nos. 16, 17, 18, and 23: Plaintiff requested documents and communications related to the incident in which a high-level employee was drugged without her consent, including documents related to any investigation. Defendants are apparently withholding documents pursuant to the attorney-client privilege, including, but likely not limited to, the emails Plaintiff sent as General Counsel to outside counsel seeking advice on how to handle the incident as well as outside counsel's memo about the incident, which Plaintiff forwarded to Defendant Benko. Importantly, this is the precise series of events that Plaintiff alleges was the protected activity forming the basis of his retaliation claim.[5] To be clear, Defendants are claiming attorney-client privilege over the exact communications for which Plaintiff alleges he was unlawfully fired.

---

[3] ELT and SLT social security numbers and home addresses can be redacted to protect their privacy interests.
[4] Defendants have agreed to amend their production to produce documents sufficient to show the ages of all individuals who were ELT members during Plaintiff's employment (2018-2023).
[5] Plaintiff produced to Defendants one email he sent to Defendant Benko and a copy of the outside counsel's memorandum related to the incident. Defendants took the position that these documents should not have been produced and should be destroyed and excised from the record.

Defendants' claim of privilege should not prevent Plaintiff from obtaining this critically material documentary evidence – i.e., the evidence that he engaged in protected activity – because doing so would violate fundamental principles of fairness. *See Gen. Dynamics Corp. v. Superior Court*, 876 P2d 487, 498 (Cal. 1994) ("in-house counsel… have, if anything, an even more powerful claim to judicial protection than their nonprofessional colleagues."). If these documents can be withheld from Plaintiff, it would essentially strip Plaintiff of his statutory civil rights simply because he was Defendant's general counsel. *See e.g., Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 179 (3d Cir. 1997) (holding that in-house counsel may make Title VII retaliation claims). Furthermore, Defendants would not be harmed by the disclosure of these documents, as it is Plaintiff's own communications that are at issue. There would be no harm in their disclosure as no new third-party would gain access to the documents, and there is a confidentiality order in place in this case to prevent the further disclosure of the documents. Moreover, Defendants should not be allowed to use these communications as a sword and a shield. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("A defendant may not use the privilege to prejudice his opponent's case…"). One of Defendants' anticipated defenses is that Plaintiff was not sincere when he took steps to investigate and report the incident. Defendants cannot assert this narrative and, at the same time, withhold Defendants' outside counsel's legal opinion about the incident, which is relevant to whether it was reasonable for Plaintiff to take the steps he did to report the incident to his superiors. *See e.g., Hussain v. Burton & Doyle of Great Neck, LLC*, Case No. 14-CV-5924, 2016 U.S. Dist. LEXIS 144223, at *13-14 (E.D.N.Y. Oct. 18, 2016) ("[A] waiver may occur even if the asserting party does not make direct use of the privileged communication itself when the party avers material facts at issue related to the privileged communication, and where the validity of those facts can only be accurately determined through an examination of the undisclosed communication."). Finally, because Plaintiff described the substance of his protected activity in his complaint and Defendants did not move to seal any part of the Complaint on attorney-client privilege grounds, Defendants have waived the privilege. *See e.g., Charlemagne v. Educ. All., Inc.,* Case No. 22-CV-1136, 2022 U.S. Dist. LEXIS 81992, at *4-7 (S.D.N.Y. May 5, 2022). For these reasons, Plaintiff requests that the Court order Defendants to produce Plaintiff's communications related to the incident, including outside counsel's memo.

## Interrogatories[6]

Interrogatory Nos. 3 and 4: Plaintiff asked Defendants to identify every person, and their respective roles, on Koneksa's ELT and SLT during Plaintiff's employment. This information is plainly relevant to Plaintiff's claims as ELT and SLT members are appropriate comparators. It also complies with Local Rule 33.3, as these individuals are "witnesses with [relevant] knowledge or information" to the case, such as their own ages, compensation, and job duties and responsibilities.

Interrogatory No. 7: Plaintiff asked Defendants to identify every person with supervisory authority over him. This information is relevant to Plaintiff's claims and Defendants' anticipated defenses and complies with Local Rule 33.3, as these individuals are "witnesses with [relevant] knowledge or information," including, Plaintiff's job duties and responsibilities and work performance.

Plaintiff hereby requests that the Court scheduled a discovery conference related to the issues raised herein. Plaintiff's counsel is unavailable from April 22 through May 1, and respectfully requests that the conference be held sometime after May 1.

---

[6] Defendants' interrogatory responses and objections are attached as Exhibit 2.

Respectfully Submitted,

/s/ Michael DiGiulio
Michael DiGiulio
32 Broadway, Suite 601
New York, NY 10004
Tel: 212-688-5640
Fax: 212-688-2548

*Attorneys for Plaintiff*