UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| GOL OPHIR, | |
|---|---|
| Plaintiff, | |
| v. | 23 Civ. 9145 (DEH) |
| KONEKSA HEALTH INC., et al., | **OPINION AND ORDER** |
| Defendants. | |

DALE E. HO, United States District Judge:

In this action, Plaintiff Gol Ophir sues Defendants Koneksa Health Inc. ("Koneksa"), his former employer, and Christopher Benko, Koneksa's CEO and Plaintiff's supervisor. Plaintiff brings claims under federal, state, and local anti-discrimination law, alleging in substance that Defendants discriminated against him due to his age when setting his compensation and that Defendants terminated his employment in retaliation for his complaints about the alleged sexual harassment and battery of another Koneksa employee. Defendants move to dismiss. *See* ECF No. 16. For the reasons given below, Defendants' motion is **GRANTED**.

I.  BACKGROUND

The following facts are drawn from the Complaint and assumed to be true, with all reasonable inferences drawn in favor of Plaintiff, for purposes of adjudicating Defendants' motion to dismiss. *See Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023).

Koneksa is a Delaware corporation with around 100 employees that sells healthcare software and services for pharmaceutical companies that conduct clinical trials. *See* Compl. ¶¶ 8, 11-12, ECF No. 1. Defendant Benko is the CEO of Koneksa. *See id.* ¶ 9. Plaintiff began working for Koneksa on December 3, 2018, as its General Counsel, Head of Corporate Development and Partnerships, and Chief Risk Officer. *See id.* ¶ 10. When Plaintiff was hired,

1

he was 51 years old.  *See id.* ¶ 15.  During most of the five years that he worked for Koneksa, Plaintiff was the second oldest employee working there, and the oldest member of Koneksa's nine-person Executive Leadership Team ("ELT").  *See id.* ¶¶ 10, 17, 22.

Benko hired Plaintiff and set his pay.  *See id.* ¶ 18.  During negotiations over Plaintiff's compensation, Benko offered a package that included a base salary, equity grants, and cash bonuses.  *See id.* ¶ 20.  Benko told Plaintiff that all of the members of Koneksa's ELT received the same base-level salary and were treated the same.  *See id.* ¶ 21.  During Plaintiff's employment, however, discrepancies emerged among the ELT members' respective compensation.  *See id*.  For example, at least five members of the ELT received a base salary higher than Plaintiff, in part because Defendants hired new ELT members at a higher base salary.  *See id.* ¶ 23.  Defendants also increased the total compensation of other ELT members more than Plaintiff's compensation and gave extra equity grants to other ELT members, which Plaintiff did not receive.  *See id.* ¶¶ 26-27.  Defendants also gave significantly larger cash bonuses to other employees, including ELT members.  *See id.* ¶ 28-30.

Defendants claim to maintain a policy of ensuring that employees are paid fairly and within industry standards.  *See id.* ¶ 35.  Pursuant to this policy, Defendants commission annual reports from a third party (the "Radford Reports") that identify ranges for salaries and compensation for all job titles at Koneksa that are typical industry-wide.  *See id.* ¶ 36.  Defendants have a policy of paying their employees around the 50th percentile, with the minimum pay at the 25th percentile, for their respective roles, as described by the Radford Reports.  *See id.* ¶ 37.  The vast majority of employees are paid near the 50th percentile for the relevant role.  *See id.*

In early 2023, Renee Kaspar, Koneksa's Chief People Officer, informed Plaintiff that he was being underpaid compared to other ELT members. *See id.* ¶¶ 38-39. Kaspar informed Plaintiff that his salary was close to the 10th percentile on the Radford Reports and that he was the only member of the ELT who was paid below Koneksa's stated policies. *See id.* ¶¶ 40-41. Kaspar also informed Plaintiff that Rick Griffin, who was the only employee at Koneksa older than Plaintiff for much of Plaintiff's employment, was also being paid well below the 25th percentile on the Radford Reports. *See id.* ¶¶ 42-43. Kaspar presented these discrepancies to Benko, who declined to raise either Plaintiff or Griffin's compensation in response. *See id.* ¶¶ 46-47.

Throughout his employment with Koneksa, Plaintiff had many disagreements with Vik Shah, Koneksa's President and COO. *See id.* ¶ 51. In June 2023, Kaspar informed Plaintiff that although she does not drink, someone had spiked her drink with alcohol at a social work event and that, as a result, she got really drunk. *See id.* ¶ 56. Kaspar stated that Shah and other senior managers were present and saw who spiked her drink but did not warn her. *See id.* ¶ 57. Plaintiff recommended that Kaspar make a formal complaint so that Koneksa could investigate, which Kaspar declined to do. *See id.* ¶¶ 60-61. Plaintiff then sought legal advice from Koneksa's outside counsel, which recommended that Koneksa conduct a formal investigation into the incident, due to the serious potential for liability for sexual harassment and battery, among other things. *See id.* ¶¶ 63-64.

In July 2023, Plaintiff had a meeting with Benko, in which Plaintiff informed Benko about the incident with Kaspar and Shah's failure to intervene. *See id.* ¶ 66. Benko told Plaintiff to drop the incident, as it was not a big deal, and stated that Plaintiff was using the incident to deflect from issues with his own work. *See id.* ¶¶ 68-69. Benko was also upset that Plaintiff had

3

involved outside counsel. *See id.* ¶ 72. Following the July meeting, Plaintiff circulated outside counsel's memorandum recommending an investigation. *See id.* ¶ 76. On August 1, 2023, Benko told Plaintiff that his "time was up" at Koneksa, and offered him the choice of resignation or termination. *See id.* ¶¶ 77-78. When Plaintiff declined to resign, Benko fired him. *See id.* ¶ 79. On August 17, 2023, Plaintiff filed a charge with the Equal Employment Opportunity Commission, alleging age discrimination. *See id.* ¶ 6. On October 17, 2023, Plaintiff filed this lawsuit. *See id.* On December 19, 2023, Defendants moved to dismiss. *See* ECF No. 16.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[1] "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))."

## III. DISCUSSION

Plaintiff brings seven claims. Plaintiff's sole federal claim is dismissed for failure to state a claim. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state and city claims, the remaining claims are dismissed without prejudice to refiling in state court.

---

[1] In all quotations from cases, internal quotation marks, brackets, ellipses, citations, footnotes, and other alterations are omitted unless otherwise indicated.

A.     **Federal Claim**

Plaintiff's first claim alleges a violation of the federal Age Discrimination in Employment Act (the "ADEA"), arguing that Defendants paid Plaintiff less because of his age. *See* Compl. ¶¶ 82-87. The ADEA makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "[T]o establish a prima facie case of age discrimination, the plaintiff must show that (1) she is within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020). "[T]o defeat a motion to dismiss . . . , an ADEA plaintiff must plausibly allege that he would not have been [subject to the adverse employment action] *but for* his age." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) (emphasis added).

Plaintiff's allegations with respect to age discrimination are, in substance, as follows. First, Koneksa adopted a company-wide policy that an employee's compensation should be at the 50th percentile of the salary ranges for his or her respective role, with minimum pay at the 25th percentile (as given in the Radford Reports). *See* Compl. ¶ 37. While the vast majority of Koneksa's employees were paid near the 50th percentile of the range for their roles, the two oldest employees at Koneksa (including Plaintiff) were paid well below the 25th percentile of the range for their respective roles. *See id.* ¶¶ 37, 40, 42-43. In addition, Koneksa had a policy that members of the ELT would be paid equally, including the same base-level salary. *See id.* ¶¶ 21, 37. However, at least five ELT members received higher base salaries than Plaintiff, the oldest member of the ELT, and some members of the ELT received equity grants and large cash

bonuses that Plaintiff did not receive. *See id.* ¶¶ 23, 26, 28. When presented with these discrepancies, Kaspar, Koneksa's human resources officer, informed Plaintiff that he was being underpaid compared to the other ELT members. *See id.* ¶ 39. When Kaspar took her concerns about the discrepancies in older employees' pay to Benko, he declined to modify Plaintiff's compensation. *See id.* ¶ 47.

Even accepting all of these facts as true and drawing all reasonable inferences in Plaintiff's favor, this is insufficient to plausibly allege that Plaintiff's compensation was set *but for* his age, and therefore, to plead a claim for age discrimination under the ADEA. While the Complaint alleges lower pay for older workers, which can be probative of discrimination, it does not include sufficient factual allegations to establish a plausible claim for relief.

The Complaint sufficiently alleges some form of differential pay between Koneksa's two oldest workers and the rest of its employees. In *Lenzi v. Systemax, Inc.*, the Second Circuit reversed a grant of summary judgment on a Title VII claim, crediting the plaintiff's evidence that she was paid "at a rate that was below market for her position" while the defendant "paid nearly all of [her] male executive peers above market rate for their respective positions." 944 F.3d 97, 111 (2d Cir. 2019). The employer used industry benchmarks to set employee salaries, thus allowing the plaintiff to compare the deviation from these benchmarks for her salary against those of her male peers, despite the plaintiff and her peers having different job titles and roles at the employer. *See id.* at 104 n.5 ("Market rate here refers to rates derived from salary benchmarking data [the defendant] used to determine its employees' salaries."). This evidence, when combined with remarks from the plaintiff's supervisor regarding women, was sufficient to make a prima facie showing of discriminatory intent under the burden-shifting framework used

in Title VII claims.[2] *See id.* at 111; *accord Boatright v. U.S. Bancorp*, No. 18 Civ. 7293, 2020 WL 7388661, at *15 (S.D.N.Y. Dec. 16, 2020) ("*Lenzi* . . . permitted a plaintiff to proceed when she showed that she was paid at a rate below the prevailing market salary for her position, while men in different positions at her employer were paid at an above-market rate.").

In this case, discrepancies from market rate salaries are similarly probative, as the Complaint alleges that Koneksa affirmatively adopted the Radford Reports' salary ranges as targets for compensation. *See* Compl. ¶¶ 36-37. The fact that Koneksa's two oldest employees were paid well below their salary target, while the vast majority of employees were paid at the median of their range, *see id.*, is evidence of a pay disparity. *See also United Prob. Officers Ass'n v. City of N.Y.*, No. 21 Civ. 218, 2022 WL 875864, at *8 n.11 (S.D.N.Y. Mar. 24, 2022) (finding plaintiffs did not adequately plead a discrimination claim in part because they did not "allege that [their] salaries are also set at a specified range but that they are paid more than the lowest allowable amount within that range, in contrast to [alleged comparator employees]").[3]

---

[2] *Lenzi* was decided under Title VII, not the ADEA, and "interpretation of the ADEA is not governed by Title VII decisions." *Lively*, 6 F.4th at 303 n.5 (calling the two statutes "materially different"). Accordingly, the Court treats *Lenzi* as persuasive authority for a limited proposition: that, to establish pay discrimination based on membership in a protected group, a plaintiff may offer evidence of a pattern of deviation from salary ranges used by the employer to set compensation, even if the employees in question do not perform equal work or have the same role. *See Lenzi*, 944 F.3d at 110.

[3] The Complaint also alleges that Plaintiff, the oldest member of the ELT, did not receive forms of compensation or a base salary that other ELT members did. *See* Compl. ¶¶ 23, 26, 28. These allegations are less compelling because, among other things, (1) it is unclear whether Plaintiff alone or Plaintiff and three other ELT members received the lower base salary, *see id.* ¶ 23, (2) the Complaint makes no allegations about the reasons other ELT members were given additional equity grants and Plaintiff was not, *see id.* ¶¶ 26-27, (3) the Complaint's allegations about the ELT members' compensation, read as a whole, suggest compensation was set to accommodate various concerns, including, e.g., to retain talent, *see id.* ¶ 29, and (4) the Complaint does not allege the relative ages of any members of the ELT—so it is unclear whether Plaintiff was only slightly older than other ELT members, undercutting any inference of discrimination, and so on. In contrast, the Complaint does allege a company-wide policy of setting compensation with

In addition to deviations from the Radford Reports, the Complaint also alleges that, in response to her conversation with Plaintiff, Kaspar spoke with Benko about raising Plaintiff and Griffin's salaries to a comparable level to their peers. *See* Compl. ¶ 46; *see also id.* ¶ 41 ("Ms. Kasp[a]r said she was shocked at how low [Plaintiff's] base salary was compared with the rest of the Executive Team, including compared with her own salary, and compared to peers in the industry."). In response, Benko declined to remedy any gap. *See id.* ¶¶ 46-47. In sum, Plaintiff adequately alleges differential pay between Koneksa's two oldest employees and the rest of its workforce, and the employer's indifference to this gap when made aware of it.

But this disparity, by itself, is insufficient to establish a claim under the ADEA. Plaintiff must do more than show that a wage disparity exists—he must show that his compensation would be set higher *but for* age-related discrimination. *See Doheny v. Int'l Bus. Machs., Corp.*, No. 23 Civ. 3962, 2024 WL 382142, at *5 (S.D.N.Y. Feb. 1, 2024) (holding that, in a disparate treatment claim under the ADEA, "proof of discriminatory motive is critical"); Compl. ¶ 83 (alleging that "Defendants intentionally and willfully paid Plaintiff less compensation because of his age"). The existence of a wage disparity does not, in and of itself, do so. *Cf. Belfi v. Prendergast*, 191 F.3d 129, 140 (2d Cir. 1999) (holding that under Title VII, even when a plaintiff showed that "the explanations offered by her employer for wage disparity are false, . . . it must also be shown that not only was the reason offered false, but that the real reason was discrimination"). The Complaint not only fails to allege in a non-conclusory manner that the pay disparity experienced by Plaintiff was *because* of age-based discrimination, but read as a whole, the Complaint also suggests non-discriminatory reasons why Defendants may have set Plaintiff's

---

respect to outside benchmarks and that Koneksa's two oldest employees were two of the very few employees not to match these benchmarks, which is sufficient to allege some form of pay disparity.

8

compensation lower than that of other employees, including his "many disagreements with . . . Koneksa's President and Chief Operating Officer, about management styles, follow through, and strategy." Compl. ¶ 51.[4]

The Complaint does not sufficiently allege that Plaintiff's compensation was set due to age discrimination, and accordingly, Claim One, the ADEA claim, is dismissed.

B.     Remaining Claims

The ADEA claim is the sole federal claim alleged. *See id.* ¶ 5 ("This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because the case is brought under the ADEA. This Court has supplemental jurisdiction over the New York state law claims . . . ."). Because the federal claim is dismissed, the Court declines to exercise supplemental jurisdiction over the remaining state and city claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 404 (2d Cir. 2017) (Calabresi, J., concurring) ("[A]fter all federal claims have been dismissed, the default rule is that federal courts should not decide related state–law claims unless there is good reason for doing so."). Accordingly, Claims Two through Seven are dismissed, without prejudice to refiling in state court.

---

[4] The Complaint contains no allegations regarding the work performance, positive or negative, of Griffin (the only employee at Koneska older than Plaintiff) and therefore provides no basis to conclude his salary was set due to discrimination.

* * *

For the reasons given above, Defendants' motion to dismiss is **GRANTED**. Defendants' request for oral argument is denied, as moot.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 16 and to terminate the case.

SO ORDERED.

Dated: June 12, 2024
New York, New York

_____
DALE E. HO
United States District Judge