Meredith Cavallaro
Tara H. Curtin
Samantha L. Frenchman
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas, 9th Floor
New York, New York 10020
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GOL OPHIR,

              Plaintiff,

              v.

KONEKSA HEALTH INC. and CHRIS BENKO,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:23-cv-09145-DEH

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100
Attorneys for Defendants

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT FACTS ..............................................................................................................2

    Plaintiff is Only "Several" Years Older than Other ELT Members ..................................2

    Plaintiff's Pay Disparity is Not Clearly Alleged and is Not Alleged to be Based on Age ...................................................................................................................2

    The Company Used Compensation to Retain and Attract ELT Members .........................4

    The PAC's New "Cultural" Allegations are Conclusory and Irrelevant ............................5

    Plaintiff's Supervisor, Mr. Benko, Did Not Make a Single Remark About Plaintiff's Age ....................................................................................................................6

PROCEDURAL HISTORY....................................................................................................6

ARGUMENT ..........................................................................................................................7

    I.    A Futile Amendment is Not Permitted Under Rule 15(a) ...........................................7

    II.    The PAC *Still* Fails To State An Age Discrimination Claim Under the ADEA............8

        A.  The Proposed New Allegations Are Insufficient under the ADEA ....................... 9

            1.  Plaintiff Does Not Adequately Allege that His Compensation Was Determined Based on His Age ...............................10

            2.  Plaintiff's New Allegations Are Futile .....................................................12

            3.  There is No Individual Liability Under the ADEA .................................15

    III.   Defendants Would be Prejudiced By Granting Leave to Amend ................................15

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

Cases                                                                                                                                      Page(s)

Adams v. Network Temps, Inc.,
No. 23-cv-5817-LTS, 2023 U.S. Dist. LEXIS 197008 (S.D.N.Y. Oct. 27, 2023) ..........................8

Bohnet v. Valley Stream Union Free Sch. Dist. 13,
30 F. Supp. 3d 174 (E.D.N.Y. 2014) ........................................................................................9

Caputo v. Copiague Union Free Sch. Dist.,
218 F. Supp. 3d 186 (E.D.N.Y. 2016) ....................................................................................10

Cherry v. Toussaint,
50 F. Appx. 476 (2d Cir. 2002)...............................................................................................15

Desrosiers v. Summit Sec. Servs.,
No. 21-cv-10941-JPO, 2022 U.S. Dist. LEXIS 192512 (S.D.N.Y. Oct. 21, 2022)............... 13-14

Doolittle v. Bloomberg L.P.,
No. 22-cv-09136-JLR, 2023 U.S. Dist. LEXIS 194764 (S.D.N.Y. Oct. 31, 2023)...............8, 9, 10

Gross v. FBL Fin. Servs., Inc.,
557 U.S. 167 (2009)................................................................................................................8

Kaplan v. Beth Israel Med. Ctr.,
No. 07-cv-8842 (RPP), 2010 U.S. Dist. LEXIS 32200 (S.D.N.Y. March 31, 2010) ...................11

Ko v. JP Morgan Chase Bank, N.A.,
No. 16-cv-7707 (DAB), 2017 U.S. Dist. LEXIS 120930 (S.D.N.Y. July 31, 2017)....................15

Krys v. Pigott,
749 F.3d 117 (2d Cir. 2014)....................................................................................................7

Lenzi v. Systemax, Inc.,
944 F.3d 97 (2d Cir. 2019)................................................................................................ 14-15

Lively v. WAFRA Inv. Advisory Grp., Inc.,
6 F.4th 293 (2d Cir. 2021) ..................................................................................................8, 14

Marcus v. Leviton Mfg. Co., Inc.,
661 F. Appx. 29 (2d Cir. 2016)................................................................................................8

Moore v. Verizon,
No. 13-cv-6467, 2016 U.S. Dist. LEXIS 16201 (S.D.N.Y. Feb. 5, 2016)...................................13

Roth v. Westbury Mem'l Pub. Libr.,
No. 23-cv-2862-RPK-ARL, 2024 U.S. Dist. LEXIS 131918 (E.D.N.Y. July 25, 2024) ..............13

Ruotolo v. City of New York,
514 F.3d 184 (2d Cir. 2008)..................................................................................................15

Sassaman v. Gamache,
566 F.3d 307 (2d Cir. 2009)..................................................................................................13

Spires v. MetLife Grp., Inc.,
No. 18-cv-4464 (RA), 2019 U.S. Dist. LEXIS 160181 (S.D.N.Y. Sept. 18, 2019) .......................11

Tomassi v. Insignia Fin. Group, Inc.,
478 F.3d 111 (2d Cir. 2007)..................................................................................................13

Statutes

29 U.S.C. § 623(a)(1)................................................................................................................8

Koneksa Health Inc. ("Koneksa" or the "Company") and Christopher Benko[1] ("Mr. Benko") (together, "Defendants") submit this memorandum of law in opposition to the motion (Dkt. No. 52) ("Motion") filed by Gol Ophir ("Plaintiff") to amend his Complaint (Dkt. No. 1) (the "Complaint").[2]

## PRELIMINARY STATEMENT

Nearly three months following the Court's dismissal of Plaintiff's claim under the Age Discrimination in Employment Act, 29 U.S.C. § 631, et seq. (the "ADEA") and refusal to exercise supplemental jurisdiction over Plaintiff's alleged state and city law claims, Plaintiff has attempted to revive his deficient claims by retaining new counsel and proposing to amend the Complaint. The new allegations in the proposed Amended Complaint (the "PAC") (Dkt. No. 53-1) fail to allege that Plaintiff's supervisor, Mr. Benko, the CEO and Co-Founder of Koneksa, ever specifically remarked about Plaintiff's age, set compensation on the basis of *any* employee's age, or was even aware of Plaintiff's age, individually or as compared to any other employee.

The PAC continues to fail to sufficiently allege that any disparity in Plaintiff's compensation was *because of* his age, as is required under the ADEA. The limited new claims in the PAC are lacking and conclusory, and consist of a few verbal remarks related to joking about the age of a significantly *younger* employee, Plaintiff not keeping up to date on technology "lingo," and Plaintiff's difference of opinion related to office design preferences. The PAC does nothing to establish that age was a motivating factor when it came to Company compensation, let alone *the* motivating factor for Plaintiff, as is required under the ADEA. Accordingly, the proposed amendment is futile and should be denied.

---

[1] Incorrectly referenced as Chris Benko in the case caption.
[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, filed on December 19, 2023. Dkt. No. 17.

## RELEVANT FACTS[3]

***Plaintiff is Only "Several" Years Older than Other ELT Members.***

Plaintiff is the former General Counsel, Head of Corporate Development and Partnerships, and Chief Risk Officer of the Company. PAC ¶ 10. Plaintiff was hired in December 2018 and was 52 years old when he was hired. PAC ¶¶ 14, 16. Plaintiff was a member of the Company's Executive Leadership Team ("ELT") and reported directly to Christopher Benko, the Company Co-Founder and Chief Executive Officer ("CEO"). PAC ¶ 9. Plaintiff alleges that "for most of his employment" he was "second oldest employee working for Koneksa and the oldest member of Koneksa's ELT [Executive Leadership Team]." PAC ¶¶ 17, 18. Of the seven members of the ELT referenced in the proposed Amended Complaint, Plaintiff is only "several years" older than the majority of the members, and the PAC does not allege that this is the full roster of ELT members during Plaintiff's employment. PAC ¶ 23.

***Plaintiff's Pay Disparity is Not Clearly Alleged and is Not Alleged to be Based on Age.***

Plaintiff alleges that the Company represented to Plaintiff at the time of his hire "that all of Defendant['s] top executives that were employed at the same level of [Plaintiff] (i.e., the ELT) are all treated the same and received the same base-level salary." PAC ¶ 21. Plaintiff is alleged to have "received the same base-level salary as his peers on the ELT" for the first few months of his employment. PAC ¶ 22. However, ***all*** members of the ELT "quickly ceased" to receive the same salary – this change in compensation was not specific to Plaintiff – and "***at times***"[4] certain members of the ELT received a base salary higher than Plaintiff's. PAC ¶¶ 21, 23.

---

[3] Defendants assume the facts alleged in the PAC to be true solely for the purposes of establishing the futility of Plaintiff's PAC. Nothing contained herein is an admission that any alleged fact is true. The allegations contained in Paragraphs 52 through 77 of the PAC are only minimally addressed herein as they do not relate to the ADEA claim, the only claim conferring federal subject matter jurisdiction.

[4] Unless otherwise indicated emphasis is added and internal citations are omitted throughout.

2

Plaintiff does not allege for what time period he believes he was underpaid, or the ELT members (or their ages, or specific duties, skills, and responsibilities) he believes he should have been paid commensurate with.

Plaintiff's piecemeal allegations about individual members of the ELT offer no evidence of discriminatory motive. Plaintiff alleges that two founders of the Company, who are younger than Plaintiff, were permitted "to transfer shares in the company for their personal benefit," but that this opportunity was not offered to Plaintiff, who was not a founder. PAC ¶¶ 27, 28, 46 (referring to Mr. Cantor as a Co-Founder). The PAC does not allege that this transfer opportunity was offered to *anyone* at the Company outside the founders. PAC ¶¶ 25-28. Plaintiff also alleges that the Head of Business Development, who is only "several years younger" than Plaintiff, received equity grants despite not meeting sales targets. PAC ¶ 25. Plaintiff does not allege whether the Head of Business Development had more equity than Plaintiff, the amount of equity he comparatively received, or how Plaintiff's performance targets compared to those of the Head of Business Development. Plaintiff further alleges that one ELT member, the Head of Data Science, who is also only "several years" younger than Plaintiff, received a larger bonus than Plaintiff. PAC ¶ 28. Plaintiff does not provide the metrics used to assess this bonus or the performance of the Head of Data Science. Plaintiff acknowledges that he did receive occasional cash bonuses. Id. No other specific examples are provided of other younger employees receiving higher cash bonuses than Plaintiff.

Regarding the other alleged compensation "policy," Plaintiff alleges that he was informed by the Chief People Officer that "he was the only member of the ELT who was paid below Koneksa's stated policies" of aiming to pay employees at the 50th percentile of certain industry standards. PAC ¶ 35. One other employee, who was not a member of the ELT, and was

in his "early 60s," was also alleged to have a base salary below the Company policy. PAC ¶¶ 37, 38. Plaintiff does not allege this employee's performance record, and Plaintiff acknowledges that Mr. Benko viewed Plaintiff as having "issues" with his performance. PAC ¶ 65.

Plaintiff does not allege whether other employees who were not members of the ELT and were close to his age, or older, were paid within the 50th percentile. At minimum, the other members of the ELT who were only "several" years younger than Plaintiff were allegedly compensated within this purported standard. Plaintiff does not allege that the Chief People Officer suggested in any way that compensation was determined on the basis of age. Plaintiff does not allege that when this disparity was brought to Mr. Benko's attention he was aware of Plaintiff's age, the other employee's age, or either employee's age as compared to that of any other employee.

***The Company Used Compensation to Retain and Attract ELT Members.***

Plaintiff also alleges that his base salary "became lower than that of his peers…because Defendants routinely increased the total compensation of other ELT members more than they increased [his] compensation" and that Defendant "***hired new ELT members with higher base salaries***" than Plaintiff. PAC ¶ 24. Plaintiff's base salary increased over time; however, it was not in lockstep with others on the ELT – which is all together unsurprising as these individuals' roles were as varied as the Founder and CEO, the Chief People Officer, and the Head of Data Science, and their responsibilities and performance likely also varied over time. Id. Additionally, attracting new talent with higher compensation provides no indication that compensation was based on an employee's age. Id. Plaintiff does not allege that these new ELT members were younger than him.

4

***The PAC's New "Cultural" Allegations are Conclusory and Irrelevant.***

The new allegations in the PAC are limited and relate to jokes about youth, office space preferences, and technology lingo. Dkt. No. 53-1 (see Exhibit A redline). They offer a few one-off comments, but fail to provide any reasonable inference that Plaintiff would have been compensated more, ***but-for*** his age.

The PAC newly alleges, in conclusory fashion, that Koneksa had a "culture" of favoring youth. PAC ¶ 43. Plaintiff alleges that when he first joined Koneksa in 2018, when he was being paid commensurate with the other ELT members, the management team asked him to guess the age of another ELT member who was "only 29." PAC ¶ 44. When Plaintiff guessed he was in his "mid-30's," a few individuals laughed, and the ELT member remarked "you think I look *that* old?!" Id. A few colleagues laughing about one colleague's ***youth*** does not suggest Plaintiff was discriminated against on the basis of his age, nor does it provide any basis to suggest compensation was being based on any employee's age.

Plaintiff further alleges that Mr. Benko and others teased Plaintiff about "his perceived inability to 'understand the younger generation'"; however, no remarks are alleged to have been made about Plaintiff's own age, and no specific instances of such "teas[ing]" are alleged. PAC ¶45.

Plaintiff's other new allegations discuss the selection of a WeWork office space "vibe" in 2019 as "young" and "dynamic," as compared to Plaintiff's preference for a more "traditional" office. PAC ¶ 46. Again, these allegations have nothing to do with Plaintiff's age or compensation (and ultimately the Company relocated to the location recommended by Plaintiff).

Similarly, the allegations that Plaintiff's use of IT terminology was often "corrected," and he was "mocked" among the younger engineering staff for not knowing the "latest

5

in vogue IT lingo," are limited and irrelevant, as the comments were made by a few members of the engineering team, Mr. Shah, and the Engineering Manager, *not* Mr. Benko, Plaintiff's supervisor who set his compensation. PAC ¶¶ 47-48. Similarly, the employee who asked Plaintiff to appear in a training video because the Company needed "an older person" was not Plaintiff's supervisor, and did not make any disparaging comments about Plaintiff's age. PAC ¶ 50. Plaintiff does not allege he responded that was offended by or refused the request.

The PAC's allegations that Mr. Benko "wanted Koneksa to remain a 'young' and 'fun' start-up and not act 'old'" are generic and conclusory, and relate to the cultural aspirations of the Company, not any perception of Plaintiff. PAC ¶ 49.

***Plaintiff's Supervisor, Mr. Benko, Did Not Make a Single Remark About Plaintiff's Age.***

Not a single specific remark regarding Plaintiff's age is alleged to have been made by Plaintiff's supervisor, Mr. Benko. The only allegations involving Mr. Benko relate to laughing about **Mr. Cantor's youth**, generic comments (not specifically attributable to Mr. Benko) about Plaintiff needing to "understand the younger generation," preferences for office space, and wanting the **Company** to feel like a start-up. PAC ¶¶ 44, 45, 46, 49.

The PAC includes ***no allegation*** that Mr. Benko was specifically aware of Plaintiff's age, or of Plaintiff's age compared to other ELT members. The PAC includes no allegation that Mr. Benko ever commented on Plaintiff's age, or that Mr. Benko ever made any age-related remarks in connection with performance evaluations or the setting of compensation.

### PROCEDURAL HISTORY

Plaintiff filed the Complaint on October 17, 2023, which alleged claims of (i) discrimination on the basis of age in violation of the ADEA, the New York State Human Rights Law, N.Y. Exec. Law §§ 290, et seq. ("NYSHRL"), and the New York City Human Rights Law,

N.Y.C. Admin. Code §§ 8-107, et seq. (the "NYCHRL" and, together with the NYSHRL, the "NY HRLs"); (ii) unequal pay on the basis of age in violation of the New York Labor Law ("NYLL") § 194; and (iii) retaliation in violation of the NYLL § 740 and the NY HRLs. Dkt. No. 1. On December 19, 2023, Defendants filed a motion to dismiss the Complaint in its entirety. Dkt. Nos. 16, 17, 25. On June 12, 2024, the Court issued an Opinion and Order granting Defendants' motion to dismiss the Complaint (the "MTD Order"). Dkt. No. 45. The MTD Order dismissed Plaintiff's ADEA claim for failure to state a claim under Rule 12(b)(6), and as to all other claims, declined conferring supplemental jurisdiction and dismissed without prejudice to refiling in state court. Id.

Discovery was not stayed pending the Court's MTD Order, and prior to the Order, the parties engaged in extensive written and document discovery, including serving requests for production of documents and interrogatories, responses and objections thereto. Both parties also made letter motions relating to discovery, which were decided by the Court. Dkt. Nos. 30, 32, 36, 37, 41, 44. The parties completed document discovery. Plaintiff also served a F.R.C.P. 30(b)(6) notice of deposition, to which Defendants served objections.

On September 9, 2024, Plaintiff filed the present motion seeking leave to amend and file the PAC. Dkt. Nos. 52-54.

## ARGUMENT

### I. A Futile Amendment is Not Permitted Under Rule 15(a).

Leave to amend the complaint may be denied as futile if the proposed amendment fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). See Krys v. Pigott, 749 F.3d 117, 134 (2d Cir. 2014). "The adequacy of a proposed amended complaint to state a claim is . . . judged by the same standards as those governing the adequacy of a filed pleading." Id. (holding that further amendment could not cure the absence of necessary allegations for plaintiff's claims).

7

Courts in this district have routinely denied motions for leave to amend in instances where the amendment would not support a viable claim under the ADEA. See, e.g., Doolittle v. Bloomberg L.P., No. 22-cv-09136-JLR, 2023 U.S. Dist. LEXIS 194764, at *18 (S.D.N.Y. Oct. 31, 2023) (denying plaintiff's motion to amend the complaint as to the ADEA claims as amended allegations did not adequately plead age was the "but-for" cause of defendant's alleged conduct); Adams v. Network Temps, Inc., No. 23-cv-5817-LTS, 2023 U.S. Dist. LEXIS 197008, at *5 (S.D.N.Y. Oct. 27, 2023) (declining to grant leave to amend plaintiff's ADEA claim where neither the original complaint nor the amended complaint suggest that "age was the but-for cause of [d]efendant's decision not to hire him").

## II.   The PAC *Still* Fails To State An Age Discrimination Claim Under the ADEA.

The ADEA protects employees over the age of forty from age-based discrimination relating to "compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). At the pleading stage, a plaintiff must plausibly allege that adverse employment action was taken against an employee by their employer, and that age was the ***"but-for"*** cause of the adverse action. Marcus v. Leviton Mfg. Co., Inc., 661 F. Appx. 29, 31-32 (2d Cir. 2016). "A plaintiff must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the "conceivable" to the "plausible." Id; see also Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) (holding that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision" to establish a disparate-treatment claim under the ADEA); Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 303 (2d Cir. 2021) ("[T]o defeat a motion to dismiss . . . , an ADEA plaintiff must plausibly allege that he would not have been [subject to the adverse employment action] ***but for*** his age.").

As stated in the MTD Order, "Plaintiff must do more than show that a wage disparity exists – he must show that his compensation would be set higher ***but for*** age-related discrimination." MTD Order at 8; see also Bohnet v. Valley Stream Union Free Sch. Dist. 13, 30 F. Supp. 3d 174 (E.D.N.Y. 2014) (granting a motion to dismiss an ADEA claim where plaintiff failed to accompany her conclusory allegations with specific statements of fact showing that the alleged adverse employment action was made because of her age, including plaintiff's failure to allege that defendant considered her age in any way or the age of the purported comparators in making the adverse employment decision).

The proposed Amended Complaint still does not sufficiently allege that Plaintiff's compensation was set "but for" his age, and therefore the deficiencies of the original Complaint stand, the amendment would be futile, and the motion for leave to amend must be denied.

**A. The Proposed New Allegations Are Insufficient under the ADEA.**

To establish a claim under the ADEA, a plaintiff "must show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Doolittle, 2023 U.S. Dist. LEXIS 194764, at *9, *15 (explaining that the ADEA requires that "age was the reason that the employer decided to act"). It is not disputed that Plaintiff was over 40 years old. The sufficiency of the amendment hinges on the fourth factor, whether Plaintiff has adequately alleged that the adverse employment action – his purported disparate compensation – occurred ***because of*** his age. Even accepting all of the allegations in the PAC as true, the PAC fails to allege that Plaintiff's compensation was determined based on his age, *i.e.*, had he been younger, he would have been more highly compensated.

9

### 1. *Plaintiff's Does Not Adequately Allege that His Compensation Was Determined Based on His Age.*

The PAC alleges that Plaintiff was Koneksa's General Counsel and Head of Corporate Development and Partnerships and that he was also a member of Koneksa's ELT. PAC ¶¶ 14, 17. Plaintiff alleges that at certain times, he was the oldest member of the ELT, but that the majority of the other ELT members referenced in the PAC were only "several" years younger than Plaintiff. PAC ¶ 23; see Doolittle, 2023 U.S. Dist. LEXIS 194764 at *17 (simply being the "oldest" at defendant company "is not enough to support an inference of age discrimination) (citing Caputo v. Copiague Union Free Sch. Dist., 218 F. Supp. 3d 186, 196 (E.D.N.Y. 2016)). Plaintiff recognizes that the titles of the members of the ELT varied widely, ranging from the CEO and Co-Founder to the Head of Data Science, the EVP of Finance, and the Chief People Officer. PAC ¶ 23. Plaintiff does not allege the identities of all members of the ELT during his employment, nor does he allege all of their ages or their comparative compensation.

Plaintiff alleges that at one time, the Company had a policy of equal compensation among the ELT, but that this quickly changed for all ELT members. PAC ¶ 21. Plaintiff does not allege that this change was motivated whatsoever by age. Plaintiff alleges limited, one-off examples of individual ELT members receiving "extra" or "more significant" bonuses and equity grants (including the Company founders unsurprisingly having additional equity transfer rights), but Plaintiff does not allege specific performance metrics for any individual ELT member, any comparison of his own performance metrics as compared to other members of the ELT, or the comparative difference between his compensation and that of any single member of the ELT. PAC ¶¶ 25-29. Both the Head of Data Science and the Head of Business Development, who are individually referenced in the PAC as receiving a larger bonus and extra equity, respectively, were within several years of Plaintiff's age, and not significantly younger. PAC at ¶¶ 23, 25, 28. Even

10

so, simply stating that another employee is younger and treated better, without more, is insufficient to state an age discrimination claim under the ADEA. See Spires v. MetLife Grp., Inc., No. 18-cv-4464 (RA), 2019 U.S. Dist. LEXIS 160181, at *20-21 (S.D.N.Y. Sept. 18, 2019) (allegations that plaintiff was the oldest staff member in his department and that another younger employee was given a promotion over plaintiff were insufficient to state a claim for age discrimination); see also Kaplan v. Beth Israel Med. Ctr., No. 07-cv-8842 (RPP), 2010 U.S. Dist. LEXIS 32200 (S.D.N.Y. March 31, 2010) (concluding that a three-year age difference is insufficient to create an inference of discrimination). Additionally, the allegations that each of these roles require "equal levels of skills, duties, and responsibilities" as Plaintiff's role as former General Counsel and Head of Corporate Development and Partnership are entirely conclusory. PAC at ¶¶ 26, 29.

Plaintiff additionally alleges that Koneksa had a Company policy of paying all employees at the 50th percentile of an industry standard, but that Plaintiff learned from the Chief People Officer in 2023 that both he and another employee (not in the ELT) in his early 60s were being compensated below this benchmark. PAC ¶¶ 32, 35, 37, 38. Plaintiff does not allege that the Chief People Officer remarked or suggested in any way that compensation was determined based on age. Plaintiff does not allege the other employee's general work performance (positive or negative), or whether Plaintiff had received any specific feedback from Mr. Benko (or any other member of the ELT) regarding his performance, except for a reference to Mr. Benko stating there were "issues" with Plaintiff's work that Mr. Benko believed Plaintiff was attempting to deflect. PAC ¶ 65.[5]

---

[5] Glaringly absent from the PAC are Plaintiff's prior allegations that he had repeated disagreements with and levied critiques of the COO and President of the Company, Mr. Shah. See Dkt. No. 53-1 (redline of original Complaint at ¶¶ 51, 52, 81). While these allegations have been struck from the pleading (in a transparent attempt to eliminate one of the non-discriminatory reasons for Plaintiff's compensation identified in the MTD Order), they will certainly remain in the factual record if this matter proceeds to discovery.

Besides this reference to the "issues" with Plaintiff's work, Plaintiff pleads multiple other non-discriminatory reasons why his compensation may not have increased more significantly during his employment, including, primarily "because Defendants *hired new ELT members with higher base salaries*." PAC ¶ 24. Increasing compensation to attract new talent is not indicative of any discriminatory motive or evidence that age was considered whatsoever in setting compensation. Moreover, Plaintiff does not allege the "new ELT members" with "higher base salaries" were younger than Plaintiff. Increasing salaries of existing ELT members, as a form of retention, is likewise non-discriminatory. Id. Accordingly, read as a whole, the PAC suggests multiple plausible non-discriminatory reasons why Plaintiff's compensation would be lower than that of other ELT members.

### 2. *Plaintiff's New Allegations Are Futile.*

The PAC seeks to cure the Court's directive that a pay disparity, alone, is insufficient to establish a claim under the ADEA. MTD Order at 8. As the Court noted, Plaintiff "must show that his compensation would be set higher *but for* age-related discrimination." Id.

Plaintiff attempts to provide "circumstantial" evidence inferring a discriminatory motive in addition to an alleged pay disparity, but Plaintiff's few new claims are limited, conclusory, and largely irrelevant. Plaintiff's claim that *Mr. Cantor's age and youth* were discussed at a management meeting provides no indication that Plaintiff's age was ridiculed or the subject of discussion. PAC ¶ 44. The allegations relating to the search for new office space are entirely irrelevant and at most suggest that Plaintiff's office aesthetic preferences differed from those of Mr. Benko. PAC ¶ 46. The allegations that Plaintiff was corrected regarding his use of IT terminology and that he received "eye roll[s]" and "condescen[sion] from younger engineers and the Engineering Manager, are a few stray remarks not alleged to have

12

been made by anyone with supervisory authority over Plaintiff. PAC ¶ 47. The request that Plaintiff appear in a training video, also, was not made by Plaintiff's supervisor, and Plaintiff does not allege that he refused the request. PAC ¶ 50.

No alleged discriminatory comments in the PAC are connected whatsoever to Plaintiff's compensation or *any* compensation determination. See Sassaman v. Gamache, 566 F.3d 307, 314 (2d Cir. 2009) ("[T]he closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be.") (quoting Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007)).

A few stray remarks, not made by Plaintiff's supervisor, over the course of a five-year employment that are not causally linked to any adverse employment action are not sufficient for a claim under the ADEA. See Moore v. Verizon, No. 13-cv-6467, 2016 U.S. Dist. LEXIS 16201, at *24 (S.D.N.Y. Feb. 5, 2016) (granting motion to dismiss claim for age discrimination under the ADEA where plaintiff alleged being subjected to negative, age-based comments, such as "why don't you retire" and "you are old enough to retire" and remarks that plaintiff experienced hearing loss due to age, which were insufficient to allege age discrimination under the ADEA because they constituted stray remarks and were not tied to the adverse employment action); Roth v. Westbury Mem'l Pub. Libr., No. 23-cv-2862-RPK-ARL, 2024 U.S. Dist. LEXIS 131918, at *25-26 (E.D.N.Y. July 25, 2024) (granting motion to dismiss claim for age discrimination under the ADEA where plaintiff's allegations that his coworkers regularly remarked that since plaintiff was older, he was not up to date on the latest technology, and his being replaced by a younger employee, was insufficient to state an age discrimination claim under the ADEA); Desrosiers v. Summit Sec. Servs., No. 21-cv-10941-JPO, 2022 U.S. Dist. LEXIS 192512 (S.D.N.Y. Oct. 21, 2022) (granting motion to dismiss an ADEA age discrimination claim where age-related comments

by plaintiff's manager, such as regularly asking plaintiff when he intended to retire, among other allegations, were insufficient to show that age discrimination was the but-for cause of plaintiff's termination).

The other entirely conclusory allegations that Mr. Benko "wanted Koneksa to remain a 'young' and 'fun' start-up and not act 'old'" relate to the general Company culture, and not the age of its employees or how their compensation was determined. PAC ¶ 49. As alleged, the majority of the highest level of leadership within the Company was within a few years of Plaintiff's age. PAC ¶ 23. Plaintiff's general conflicting views of the Company culture, including methods of communication and the appeal of future office space, offers another plausible non-discriminatory reason for Plaintiff's alleged disparate treatment. See, e.g., PAC ¶ 46.

Plaintiff argues that he has now pleaded sufficient similarity to Lenzi v. Systemax, Inc., 944 F.3d 97, 112 (2d Cir. 2019), a Title VII case cited and distinguished from this case in the MTD Order, such that the amendment would not be futile. Dkt. No. 54 at 13; MTD Order at 6-7 & n.2 (noting *limited* reliance on Lenzi); see also Lively, 6 F.4th at 303 (commenting on the more "lenient standard at the pleading stage" in the Title VII context and noting that the antidiscrimination provisions in the ADEA and Title VII are "materially different" and this Court's "interpretation of the ADEA is not governed by Title VII decisions."). Putting aside that inapplicability of the Title VII legal standard in the ADEA context, the Lenzi case involved a claim of sex discrimination where the plaintiff alleged not only a wage disparity between plaintiff and her male coworkers, but also pervasive, derogatory remarks from the plaintiff's supervisor, including graphic comments about his dating and sex life, disparaging remarks about his ex-wife, comments on women's bodies, emails about female stereotypes, and comments on who he would have sex with within the organization. 944 F.3d at 111. The allegations in Lenzi far exceed those

in the PAC, as there are only minimal alleged comments by Plaintiff's supervisor, Mr. Benko, none of which directly relates to Plaintiff's age, and the other allegations relate to irrelevant matters like office design and technology terminology.  See Ko v. JP Morgan Chase Bank, N.A., No. 16-cv-7707 (DAB), 2017 U.S. Dist. LEXIS 120930, at *8-9 (S.D.N.Y. July 31, 2017) (dismissing ADEA claim as plaintiff did not allege any discriminatory remarks or similarly situated individuals).

Accordingly, the allegations in the PAC are insufficient to state a viable claim for age discrimination under the ADEA, and Plaintiff's motion should be denied.

### *3. There is No Individual Liability Under the ADEA.*

While Plaintiff brings his ADEA claim against "Defendants" (PAC ¶ 89), Defendant Mr. Benko cannot be held liable under the ADEA as the statute does not permit individual liability.  Cherry v. Toussaint, 50 F. Appx. 476, 477 (2d Cir. 2002) ("the ADEA precludes individual liability").  Accordingly, the PAC cannot proceed to the extent it seeks to impose individual liability under the ADEA on Mr. Benko.

### III. Defendants Would be Prejudiced By Granting Leave to Amend.

"In gauging prejudice, [courts] consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008).  For nearly eight months, the parties engaged in extensive discovery on the allegations in the original Complaint.  Document discovery was completed, numerous discovery motions were made and resolved, and the parties were prepared to move forward with depositions.  In the event that Plaintiff is permitted to file the PAC, Defendants will be forced to restart discovery on the new allegations interposed in the PAC,

including serving new requests for production and responses and objections thereto, meeting and conferring on any discovery disputes, and raising any unresolvable disputes to the Court's attention. The parties will also serve new interrogatories. Accordingly, significant additional resources will be expended on discovery, and there will be a material delay in the case proceedings, which will push the case months back from depositions, which had been slated to proceed imminently. Accordingly, Defendants will be prejudiced by the granting of this Motion.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion must be denied.

Dated:   New York, New York
         September 23, 2024

                          PADUANO & WEINTRAUB LLP


                          By: /s/ Tara H. Curtin
                                Tara H. Curtin
                                Meredith Cavallaro
                                Samantha L. Frenchman
                          1251 Avenue of the Americas
                          Ninth Floor
                          New York, New York 10020
                          (212) 785-9100
                          mc@pwlawyers.com
                          tc@pwlawyers.com
                          slf@pwlawyers.com

                          *Attorneys for Defendants*