UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOL OPHIR,<br><br>                    Plaintiff,<br><br>            v.<br><br>KONEKSA HEALTH INC., et al.,<br><br>                    Defendants. | 23 Civ. 9145 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

      Before the Court is Plaintiff Gol Ophir's Motion for Leave to Amend his Complaint.  *See* ECF No. 52.  Plaintiff brought this wage discrimination suit against Koneksa Health, Inc. and its chief executive officer, Christopher Benko (collectively, "Defendants"), pursuant to the Age Discrimination in Employment Act ("ADEA").  He alleged that Defendants violated the ADEA by paying him less than his peers, arguing that his age was the but-for cause of the compensation disparity.  Defendants moved to dismiss under Rule 12(b)(6),[1] *see* ECF No. 16, and the Court granted that motion, holding that the Complaint was "insufficient to plausibly allege that Plaintiff's compensation was set *but for* his age," as required to "plead a claim for age discrimination under the ADEA."  Op. & Order ("Order") at 6, ECF No. 45.  Plaintiff now moves to amend his complaint.  *See* Pl.'s Mot. to Amend ("Mot."), ECF No. 52.  For the reasons explained below, Plaintiff's Motion is **DENIED**.

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

**BACKGROUND**

The following facts are drawn from Plaintiff's Proposed Amended Complaint ("PAC"), ECF No. 53-1. The Court accepts all allegations in the PAC as true and draws all reasonable inferences in Plaintiff's favor. *See, e.g.*, *Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023). Because the Court described the factual background of this case in its prior opinion and order granting Defendants' motion to dismiss, *see* Order at 1-4, this section includes only the facts necessary to resolve the pending Motion.

Plaintiff worked for Defendants as Koneksa's General Counsel, Head of Corporate Development and Partnerships, and Chief Risk Officer from December 3, 2018, through August 15, 2023. PAC ¶ 10. He was the oldest member of Koneksa's Executive Leadership Team ("ELT") and the second-oldest employee at the company. *See id.* ¶ 18.

Defendants claim to maintain two employee compensation policies: (1) to treat all members of the ELT the same and compensate them at the same base-level salary, and (2) to compensate all Koneksa employees fairly based on industry standard. *See id.* ¶¶ 21, 30. Defendants violated both policies. With respect to the first policy, for the majority of his employment at Koneksa, Plaintiff's base salary was lower than his younger ELT peers. *See id.* ¶¶ 22-24. And, unlike other ELT members, Plaintiff was not given grants of equity during his time at the company, nor was he allowed to sell or transfer his shares in the company for his personal benefit. *See id.* ¶¶ 24-27. Regarding the second policy, Plaintiff was paid "well below" the 25th percentile in the industry, *id.* ¶ 35, even though most of Defendants' employees were paid near the 50th percentile for their respective roles, *see id.* ¶ 32. Plaintiff also notes that the one Koneksa employee who was older than him was also paid "well below" the 25th percentile of the industry. *Id.* ¶ 38.

In addition to the pay disparity, Plaintiff experienced a culture at Koneksa where "older workers were mocked because of their age and younger workers were favored." *Id.* ¶ 43. ELT members commented on Plaintiff's age. *See id.* ¶¶ 45-51. Various Koneksa employees teased Plaintiff for his "perceived inability to 'understand the younger generation'," *id.* ¶ 45, referred to his business ideas as being "traditional old-school," *id.* ¶ 46, referred to him as "the old guy," *id.* ¶ 47, chided him for purportedly only understanding "old tech," *id.* ¶ 48, and typecasted him to be the "older person" in a training video, *id.* ¶ 50.

## LEGAL STANDARD

Under Rule 15(a), a leave to amend should generally be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). This is particularly true where, as here, the Court has granted a defendant's motion to dismiss. *See, e.g.*, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). A court's refusal to grant leave to amend must be based on a valid ground, such as where there is "evidence of undue delay, bad faith, [or] undue prejudice to the non-movant." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *see also Forman v. Davis*, 371 U.S. 178, 182 (1962).

A court may deny leave "in cases of futility of amendment," *Meyer v. Seidel*, 89 F.4th 117, 140 (2d Cir. 2023), meaning that the proposed amended complaint "fails to cure prior deficiencies . . . [and] does not contain enough factual allegations, accepted as true, to state a claim for relief that is plausible on its face." *Dobryakov v. Brickhouse Food LLC*, No. 22 Civ. 1390, 2024 WL 218441, at *3 (S.D.N.Y. Jan. 19, 2024). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681

F.3d 114, 119 (2d Cir. 2012). Because futility is governed by the same standard as a Rule 12(b)(6) motion to dismiss, *see Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002), for a court to find an amendment is *not* futile, the claim must be facially plausible and plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "[T]he party opposing amendment has the burden of establishing that amendment would be futile or otherwise inappropriate."[2] *Ithaca Cap. Invs. I S.A. v. Trump Pan. Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 377 (S.D.N.Y. 2020).

## DISCUSSION

Plaintiff argues his PAC successfully alleges that his compensation would have been higher *but-for* age-related discrimination. *See* Pl.'s Mem. of L. in Supp. of Mot. to Amend ("Pl.'s Mem.") at 8, 11, ECF No. 54. The Court disagrees.

The ADEA makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The statute protects "individuals who are at least 40 years of age." *Id.* § 631(a). "In order to establish a prima facie case of age discrimination, the plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020). Here, the first three elements are not in dispute. "[T]he sufficiency of [Plaintiff's]

---

[2] Because the Defendants only oppose the PAC on futility grounds, the Court does not consider other reasons, if any, for denying Plaintiff's Motion.

4

amendment hinges on the fourth factor, whether Plaintiff has adequately alleged that the adverse employment action—his purported disparate compensation—occurred *because of* his age." Defs.' Mem. of L. in Opp'n to Mot. to Amend ("Defs.' Mem.") at 15-16, ECF No. 57.

In its decision dismissing the Complaint, the Court noted that while Plaintiff successfully identified a pay disparity between Koneksa's two oldest employees and the rest of its employees, this was not enough to substantiate his ADEA claim—he also needed to "show that his compensation would [have been] set higher but for age-related discrimination." Order at 8. Plaintiff argues that the PAC cures this deficiency by "provid[ing] ample evidence from which Defendants' discriminatory intent may be inferred." Pl.'s Mem. at 11. It is true, as Plaintiff notes, that victims of employment discrimination often do not have the benefit of a "'smoking gun' attesting to a discriminatory intent," and instead are "usually constrained to rely on circumstantial evidence." *Id.* at 10-11 (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). It is also true, as Plaintiff further notes, that courts in this District may look to a variety of indicia in finding "an inference of age-based employment discrimination," *Ward v. Cohen Media Publ'ns LLC*, No. 22 Civ. 6431, 2023 WL 5353342, at *11 (S.D.N.Y. Aug. 21, 2023), such as "the employer's criticism of the plaintiff's performance in degrading terms based on a protected characteristic; its invidious comments about others in the employee's protected group; the more favorable treatment of employees not in the protected group; or the sequence of events leading to plaintiff's discharge," Pl.'s Mem. at 11 (quoting *Langella v. Mahopac Cent. Sch. Dist.*, No. 18 Civ. 10023, 2020 WL 2836760, at *7 (S.D.N.Y. May 31, 2020)). Therefore, Plaintiff *could have* cured the deficiencies in his Complaint by including facts in the PAC giving rise to an inference that he was paid less because he was older than all but one of his colleagues.

5

But the additional allegations in the PAC do not give rise to such an inference. Plaintiff does not point to any instance where Defendant Benko, his employer, made disparaging remarks about Plaintiff's age. That Benko and other Koneksa employees laughed when Plaintiff incorrectly guessed a different colleague's age, prompting that twenty-nine-year-old colleague to "feign offense at the suggestion he might be in his 30s," PAC ¶ 44, does not give rise to an inference that Plaintiff was paid less for his age. Nor does the negative reaction Plaintiff received when he suggested to ELT members that Koneksa should move from a WeWork space to a traditional office space, *see id.* ¶ 46; the Court agrees with Defendants that comments made pertaining to the start-up remaining "young" and "fun" and not acting "old" were just that—comments about company culture that cannot be plausibly read as insults regarding Plaintiff's age. Each of Plaintiff's other allegation regarding comments about his age do not involve his employer, Defendant Benko. *See, e.g.*, PAC ¶¶ 47-48 (describing "younger colleagues" as being "openly disdainful to Mr. Ophir due to his age," and identifying some of those colleagues by name, but not referencing Benko); *id.* ¶ 50 (stating that a Koneksa employee who was not Benko asked Plaintiff to be in a training video demonstrating how a specific device was used "because the Company needed 'an older person' for the video demonstration"). In short, in reading the PAC, it is difficult to find any comments or quotes attributable to Plaintiff's employer that were critical of Plaintiff's performance, much less critical comments by Benko regarding Plaintiff's age.

Several other factors counsel against granting Plaintiff's Motion. While the PAC does identify that another member of Plaintiff's protected class—Koneksa employees over forty years old—was also paid below the industry average, *see id.* ¶ 38, it does not allege that anyone in the company made "invidious comments about" that employee. Nor does the PAC address why the Court should attribute the disparity in pay between ELT members to age discrimination rather

6

than, *inter alia*, the fact that, as Plaintiff notes, "new ELT members" were hired "with higher base salaries," PAC ¶ 24, presumably for the nondiscriminatory reason of recruiting new talent. Plaintiff does not identify these "new ELT members" or their age, further counseling against this Court granting Plaintiff's motion based on pay disparities between him and "new ELT members." Plaintiff also does not sufficiently address why Defendants increasing other ELT members' salaries more than they increased his is a function of age rather than, as Defendants claim, retention. *See* Defs.' Mem. at 12.

Finally, with respect to the disparity in bonuses and equity, the allegations in the PAC do not sufficiently establish that Plaintiff was compensated less in these areas *because of* his age. The PAC alleges that "Defendants gave additional grants of equity to other members of the ELT team . . . all of whom [were] younger than Mr. Ophir." PAC ¶ 24. This is, again, indicative of a pay disparity, but not of a disparity *because of age*. The PAC alleges that "Koneska allowed younger employees, such as Mr. Cantor (who is in his 30s) and Mr. Benko (who is 10 years younger than Mr. Ophir), to sell or transfer shares in the company for their personal benefit, whereas Koneska did not permit Mr. Ophir to sell or transfer shares, thus hampering his ability to benefit from the Company's successes in the same way that his younger colleagues did." *Id.* ¶ 27. It does not explain why this disparity is attributable to the age gap between Plaintiff and Messrs. Cantor and Benko, rather than because Cantor and Benko founded Koneksa and Plaintiff did not. And the PAC's allegations about disparities in the allocation of bonuses are similarly too conclusory to support Plaintiff's ADEA claim, and also do not explain why any disparity in bonuses should be attributed to age discrimination.

In sum, Plaintiff has failed to cure the deficiencies in his Complaint such that his Motion should be granted. The PAC presents "stray remarks," which "do not constitute sufficient evidence

to support a case of employment discrimination." *Langella*, 2020 WL 2836760, at * 8. It also presents accounts of pay disparities which can, even drawing all reasonable inferences in Plaintiff's favor, be attributed to nondiscriminatory reasons. Therefore, Plaintiff's proposed amendments are futile.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Amend is **DENIED**. The Clerk of Court is respectfully directed to terminate ECF Nos. 52 & 53.

SO ORDERED.

Dated: July 14, 2025
       New York, New York

DALE E. HO
United States District Judge